131   165
133   459

JOHN T. LIDDLE, Appellee, v. ELLEN C. BLAKE, and F. F. DAWLEY, Trustee, Appellants.

**Boundaries:** ADVERSE POSSESSION. One who has not had actual possession of land in dispute up to a definite line, but has at all times during his possession regarded the line as in dispute and has attempted to buy the land in question, cannot claim the title by adverse possession.

**Boundaries:** IMPLIED AGREEMENT. Where it is evident that both proprietors of adjoining plats intended that a certain government subdivision line should be their boundary, such line will control the measurements and distances shown on the plats, and mere recording of the plats on which the width of lots are erroneously marked will not constitute an implied agreement fixing their boundary.

**Location of boundary:** SURVEY: CONCLUSIVENESS. The survey and location of a disputed boundary line made by one of the parties is not conclusive, but where the surveyor testified without contradiction that it was the true line and no other survey was offered, the court will accept such line as the boundary.

*Appeal from Linn District Court.*— HON. J. H. PRESTON, Judge.

MONDAY, JANUARY 15, 1906.

Rehearing denied Friday, June 29, 1906.

SUIT in equity to determine and establish the boundary line between plaintiff's and defendants' premises. The trial court granted the relief prayed, and defendants appeal.— *Reversed.*

*Dawley, Hubbard & Wheeler,* for appellants.

*Deacon & Good,* for appellee.

DEEMER, J.— Plaintiff is the owner of the northeasterly forty-two feet of lot 10 in block 11 in Greene and Col-

lege addition to the city of Cedar Rapids and defendants are the owners of outlot A of S. C. Bever's Second addition to the city of Cedar Rapids. The controversy is over a strip of ground nine feet and two inches in width between these two pieces of ground; each party claiming that it is a part of his property. What is known as "Greene and College Addition" to the city of Cedar Rapids was platted in the year 1871. By this plat lot 10 of block 11 therein is shown to have a frontage on Iowa avenue of 60 feet. The division line between this and what was thereafter known as "S. C. Bever's Second Addition" to said city was the one separating the E. $\frac{1}{2}$ from the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 22, and by these plats this line simply touched the southeasterly corner of lot 10, block 11, leaving a frontage of practically sixty feet on Iowa avenue, which abutted it on the south. In the year 1877 S. C. Bever platted his Second addition to the city, and by this plat the division line between the two tracts was fixed seventeen feet further west than it appeared to be on the Greene and College plat. In other words, a triangular piece was carved out of what was called "Block 11" of the Greene and College tract, seventy-seven feet in width on Iowa avenue and one hundred and ten feet long on what was known as "Bever Avenue." As the lots in the Greene and College addition were but sixty feet in width, it is manifest that there is a discrepancy on the face of the plats of some seventeen feet in the frontage on Iowa avenue, and of something like seventy-five feet in the frontage on Bever street. This difficulty was discovered many years ago, and the parties in interest endeavored to adjust the matter by private agreement, but were unable to do so. There has consequently been a dispute ever since as to the true boundary between these parcels of ground, although as a matter of fact, the difficulty might have been solved at any time by having a surveyor run the line between the Greene and College addition and the Bever addition. This was not done until about the time this suit

was commenced, when a surveyor was employed by defendants, who ran the section and lot lines, fixing them where the defendants now claim them to be. They thereupon erected a fence upon this line, and this action was then commenced.

If there has been any actual possession of the property, it has been in the defendants, although we do not find this to have been sufficient to give them title by adverse possession. Plaintiff's possession, such as he and his grantors have had, has not been adverse for many reasons: First, because they have not been in actual possession up to any definite line, and, second, because they have at all times regarded the line as in dispute, and have attempted to buy the tract now claimed by defendants. Many years ago there was a fence built between the two tracts, which was somewhat westward of the line as now claimed by defendants, but this fence was afterward torn down or allowed to decay and fall down. A cement walk was built in front of the two lots, and defendants, as we understand it, paid for that part in front of the piece of ground now in dispute. Protest against this was made by plaintiff, but the most that can be said of this incident is that it shows no agreement as to the true line. In fact there is no testimony in the case of any express agreement between the parties as to the true line. So that there is no adverse possession in the case, and no express agreement as to the boundary between the two tracts.

1. BOUNDARIES: adverse possession.

Moreover, the evidence shows without dispute or contradiction that the true line is where the defendants claim it to be. This gives them the property in dispute, unless we are able to find from the evidence sufficient facts upon which to base a finding of an implied agreement or acquiescence in the boundary as now claimed by plaintiff. Of this there is no testimony, save the recorded plats to which we have referred. These, as we have said, show a discrepancy in the line between

2. BOUNDARIES: implied agreement.

the two lots; and it is stoutly insisted that as the first Bever plat shows a frontage to the outlot of but seventy-seven feet, .and the second of but seventy-nine feet on Iowa avenue, this amounts to an implied agreement that the lot is no wider than the number of feet marked on the plat, to wit, either seventy-seven or seventy-nine feet. On the other hand, it is contended that, as all the plats show a line controlled . by the original government survey, this line must govern, and will prevail over any mere figures shown upon the plat, and that in any event the actual monuments fixed at the time the plat was made should be given controlling importance. The testimony fairly shows, as we have said, that the true line is where defendants claim it to be; and monuments erected at various times correspond with this line. That everything yields to known monuments and boundaries is well established by authority. *Rowell v. Weinemann,* 119 Iowa, 256. Courses and distances given in a plat or field notes of a survey are generally more or less uncertain, and always give way in case of doubt and discrepancy to known monuments and boundaries used in identifying the corners and lines of the tracts. *Jordan v. Ferree,* 101 Iowa, 440; *Root v. Town,* 87 Iowa, 202.

Considering all the plats it is manifest that none of the parties who were responsible for them were intending to claim beyond or over the true line between the two eighty-acre tracts of land, which were platted by the respective proprietors. The Greene and College plat made the eastern boundary of lot 9 and a part of lot 10, in block 11, and of the entire plat, the original and true line between the two eighty-acre governmental subdivisions of the land. It would appear from this plat that this line took off but little of lot 10, but, as we have said, the parties made the original government line controlling. And so, when Bever came to make his plat, he fixed the western boundary of the outlot now owned by defendants, as well as of his entire addition, as the true boundary between the two eighty-acre tracts of land.

True, these plats give the measurements of the outlot on Iowa avenue as. seventy-seven and seventy-nine feet, respectively; but his purpose to claim to the true boundary line, whatever its distance, is apparent. So that there is no implied agreement in the case. Indeed, the testimony, as we have already said, shows a dispute as to the boundary from the time that Bever made his second plat. This clearly negatives any thought of an agreement by implication. There have never been any fences or other structures, erected by either of the parties, marking the boundary between the two lots. Hence there is no room for inferring an agreement by reason thereof, as in the many cases cited and relied upon by appellee. Such possession as is shown was by defendant Blake and her grantors up to and even beyond the line now claimed by her and her trustee, Dawley. There is nothing in the case, save the filing of the Bever plats, to bring it within the rule of *Miller v. Mills County,* 111 Iowa, 654, and other like cases. And the filing of the plats in itself did not, under the circumstances disclosed by this record, amount to an implied agreement or acquiescence in any boundary other than the true one. The filing of these plats did not mark out upon the ground itself any particular line as being the boundary, and it is only by laying them upon the ground, speaking figuratively, of course, that any boundary is marked out. When that is done, the primary question is: What is the true line between the two eighty-acre tracts of land? That, as has been observed, is where defendants claim it to be.

It is said that the survey made by the surveyor who ran the line is not conclusive, and that his testimony is unreliable and insufficient to establish the true boundary line. As it was not an agreed survey, it is true that his testimony is not conclusive. But he testified squarely and unequivocally as to the true line, and plaintiff did not see fit to contradict his testimony; nor did he have any other survey made. In the absence

3. LOCATION OF BOUNDARY: survey: conclusiveness.

of a dispute in the testimony as to the true line, we must accept that as fixed by the defendants' surveyor. If he was mistaken, it would have been easy for plaintiff to have shown that fact by other competent witnesses. The case is ruled by the application of well-settled principles, and there should, in our opinion, have been a decree dismissing plaintiff's petition and quieting defendants' title to the strip in dispute.

The case must therefore be reversed, and remanded to the district court for such a decree.

*Reversed and remanded.*