MARIA JORDAN v. J. D. FERREE, *et al.*, Appellants.

**Estoppel:** BOUNDARY LINE. Plaintiff is not estopped to claim to the true boundary line because the adjoining owner called her attention to another line while they were grading their lot, and told her that they understood that to be the boundary line, and that they wished to improve their lot with reference to it, and she answered that she was satisfied that the line thus indicated was the proper one, and told them to go on with their work, which they did, where she did not know the true location of the boundary and her statements were, merely, in the nature of informal expressions of opinion.

**ADVERSE POSSESSION.** Title by adverse possession, under claim of ownership, to a strip on the boundary between the lots cannot be based upon occupation for more than ten years by the owner of one of the lots, under a mistake as to the location of the boundary line, and without any intention to claim any part of the other lot.

**Appeal:** NEEDLESS COSTS. The appellee may be taxed with one-half of the costs of an additional abstract filed by him, although it contained some important matter, and the decree was affirmed, it appearing that it contained also much that was immaterial.

*Appeal from Wapello District Court.*—HON. F. W. EICHELBERGER, Judge.

WEDNESDAY, APRIL 7, 1897.

THE plaintiff commenced an action at law to recover damages alleged to have been caused by the defendants, J. D. Ferree and T. E. Muir, in so grading a lot as to injure an adjoining one owned by her. That action was consolidated with one brought by Ferree to enjoin her from enclosing, as her own, a strip of ground lying on the boundary line of the two

lots. Thereafter, all the issues relating to that strip of ground were transferred to the equity docket for hearing, and the trial of the remaining issues was continued. There was a hearing of the equitable issues, and a decree which awarded to the plaintiff the ownership of the ground in controversy. From that decree the defendants appeal.

*Work & Lewis* for appellants.

*W. W. Cory* for appellee.

ROBINSON, J.—I. The plaintiff is the owner of lot numbered 1, of Godfrey's sub-division of the west one-half of outlot numbered 29, in the city of Ottumwa, and the defendant, Ferree, owns lot numbered 2, of the same sub-division. In the year 1846, a portion of the west one-half of the southwest one-fourth of section 19, in township 72 N., of range 13 W., was platted into outlots among which were outlots numbered 26, 27, 28, 29 and 30. In the year 1869, George Godfrey, in whom the title to the west part of outlot 29 was then vested, sub-divided it into two equal parts, of which the north part was numbered 1, and the south part was numbered 2. They extended lengthwise from east to west, were bounded on the west by Court street, and occupied high ground, which sloped southward, lot 1 being higher than lot 2. After the sub-division was made, Godfrey conveyed lot 1 to a man named Stebbins, who built a fence on or near its south boundary line. That fence extended from the east end of the lot, westward two-thirds of the distance to the street. Godfrey built a stone wall on the west end of lot 2. About the year 1876, the plaintiff purchased lot 1 of Stebbins, and has occupied it since that time as a homestead. In the same year Godfrey sold lot 2, and in the year 1891 the defendants became

its owners, and in July, 1892, Muir conveyed his interest therein to Ferree. Before that was done, and while they owned the lot together, they removed a quantity of earth from it; and when they had completed the grading, the west part of lot 2 was eighteen feet, and the east part about six feet, lower than the corresponding parts of lot 1. Court street is twenty-eight feet lower than lot 1, which is terraced back from the street. After the defendants had graded lot 2, the plaintiff constructed a stone retaining wall on or near the south boundary line of her lot. She now claims to own a strip of land south of that wall extending along the south side of lot 1, 4.8 feet wide at the east end of the lot, and 3.59 feet wide at its west end. The district court found that the strip thus described is a part of lot 1, and adjudged the title thereto to be in the plaintiff. Much evidence to establish the boundary line between lots 1 and 2 has been submitted. Numerous surveys have been made, and a number of surveyors have testified in regard to different surveys, monuments, courses, distances, and boundary lines. To set out the evidence thus given, or any portion of it, would be wholly useless. It is enough to say that different surveys are conflicting, and that the surveyors do not agree as to the true boundary line. A careful examination of all the evidence satisfies us, however, that the line shown by the original plat, and the courses and distances given therewith by the surveyor, is the one claimed by the plaintiff and established by the district court. That is shown by several careful surveys, which were based upon well-established corners in the government surveys which have long been regarded and treated as correct, and used in improving that part of the city. While recognizing the fact that there are some discrepancies between different surveys, hard to explain, we are satisfied that the surveys as a whole, sustain the conclusion of the district court. But it is

said that the plat of the sub-division does not correctly represent the original survey as actually made, and the line which was in fact located by the surveyor. That is the true line. Therefore, if there is disagreement between the survey actually made, and the plat, the former must control. *Root v. Town of Cincinnati*, 87 Iowa, 202 (54 N. W. Rep. 206), and cases therein cited. The defendants, in the support of claim that the actual survey and the plat do not agree, insist that the fence built by Stebbins and the north end of the wall constructed by Godfrey are shown to have been placed on the line in dispute when its true location was known, and the surveyor's stakes were still to be seen. There is much in the record to support that theory. Godfrey was present when the survey was made, and thinks he built the stone wall within one year from that time, and that the north end of the wall was placed at the boundary line in controversy at the point shown by the surveyor's stake. But that wall was afterwards torn down when Court street was graded, and when the grading had been done the wall was rebuilt. Godfrey thinks the north end of the new wall was placed where it was before, and in the year 1891, that was nearly three feet north of the line established by the district court. We do not regard the evidence on this point as sufficient to overcome that in support of the plat and surveys. Godfrey admits that he intended to so divide the ground included in the two lots as to make them of equal size, and they would not have been equal had the north end of the wall, as it stood in 1891, been on the line actually fixed by the surveyor. Godfrey's conveyance to Stebbins was of "lot one (1) in Godfrey's subdivision of the west half of outlot twenty-nine (29), Ottumwa, Iowa, subject to the conditions that if, by any survey, the size of lots one and two (1 and 2) in said sub-division

should be changed, this conveyance shall convey only one-half of said two lots." While Godfrey is confident that the stake which governed the location of the first wall was where it was set by the surveyor, yet that may not have been true. When that wall was removed, the street graded down, and the wall rebuilt, its north end may not have been placed exactly where the north end of the other stood. No effort appears to have been made to locate either wall with the precision required for the marking of a permanent boundary line. Godfrey believes, but is not certain, that the fence built by Stebbins was on the line. Other witnesses disagree as to its location, and the testimony in regard to it is entitled to but little weight. We conclude that the preponderance of the evidence is in favor of the line established by the district court.

II. It is said, however, that the respective owners of the lots claimed and occupied to the line for which the defendants contend for more than ten years before the controversy on which this action is based arose; that when the grading in question was being done, the plaintiff and the defendants agreed upon that line as the true one, and that thereafter the defendants, relying upon that agreement, incurred much expense in grading, of which the plaintiff knew; that by reason of these facts the rights of the plaintiff are determined by that line, and that, if it has not in law become the real boundary line, the plaintiff is estopped to question it. It does not appear that the owners of lot 2 at any time claimed to own more than was actually included in that lot, and, if title to the line contended for by the defendants was claimed, it was under the erroneous belief that it was the true line. The case in that respect is governed by the rule announced in *Grube v. Wells*, 34 Iowa, 148, and followed in *Skinner v. Crawford*, 54 Iowa, 119 (6

N. W. Rep. 144); *Weinig v. Holcomb,* 73 Iowa, 143 (34 N. W. Rep. 787); *Fisher v. Muecke,* 82 Iowa, 548 (48 N. W. Rep. 936); *Heinz v. Cramer,* 84 Iowa, 497 (51 N. W. Rep. 173), and *Goldsborough v. Pidduck,* 87 Iowa, 600 (54 N. W. Rep. 431). Title by reason of adverse possession under claim of ownership, therefore, is not shown. The defendants claim that while they were grading lot 2 they stretched a chalk line along the line for which they contend, and called the plaintiff's attention to it, and told her they understood it to be on the boundary line between the lots, and that they wished to improve their lot with reference to that line; that she answered that she was satisfied that the line thus indicated was the proper one, and told them to go on with their work. The plaintiff denies that she had such a conversation with the defendants. It does not appear that there had been, at that time, any question between the parties in regard to the location of the line, while it does appear that the plaintiff did not know its true location until after she had commenced her action to recover damages for the alleged wrong of the defendants in so grading their lot as to injure her lot. Surveys were made then, and the true location of the line discovered. Even if the defendants had a conversation with the plaintiff, as they claim, they fail to show that it was designed by either party to settle a disputed line; and, if the plaintiff made the statements attributed to her, they were in the nature of informal expressions of opinion or belief in regard to a matter concerning which the defendants had as much information as she possessed, and what she said was due to a mistake of fact, for which she was not responsible. Under the circumstances disclosed, if she said what is claimed, it should not be given any contractual force, and the defendants were not justified in relying upon it as definitely fixing the boundary

line.    The retaining wall which she constructed
was of a temporary character, laid without mortar,
and was built after the grading of lot 2 had been
done.    It is not of any special importance to a deter-
mination of the question in controversy.    The case
with respect to the estoppel relied upon by the defend-
ants is materially different in controlling facts from
*Ross v. Ferree,* 95 Iowa, 604 (64 N. W. Rep. 683).    We
conclude that the boundary line in controversy was
properly located by the district court, and that the
plaintiff is the owner of the strip of ground in contro-
versy.

III.    The appellants complain of an additional
abstract filed by the appellee, and ask that it be
stricken from the files.    It contains some important
matter and will not be stricken.    But it also
3       contains much that is immaterial, and one-half
of the costs, therefore, will be taxed to the appel-
lee.    The decree of the district court is AFFIRMED.