CHARLES EVERT, Appellee, v. A. D. TURNER et al., Appellants.

ADVERSE POSSESSION: Possession by Mistake.  Possession of
1  land by mistake, because in excess of the calls of the deed under which the possessor intends to confine himself, will not ripen into adverse title against the true owner.  So held where the mistake arose from choosing the wrong starting point in measuring the land.

**BOUNDARIES:** Length of Acquiescence. Acquiescence in a boun-
2  dary line must continue unbroken for a period of ten years, in
order to render the line unassailable.

*Appeal from Woodbury District Court.*—GEORGE JEPSON,
Judge.

DECEMBER 14, 1918.

ACTION to quiet title to a certain strip of land. De-
fense: Adverse possession and acquiescence. Decree for
the plaintiff in the court below. Defendants appeal.—*Af-
firmed.*

*Edwin J. Stason,* for appellants.

*Henderson, Fribourg & Hatfield,* for appellee.

GAYNOR, J.—The plaintiff and the defendant are the
owners of adjoining lots, each lot consisting of five acres.
The plaintiff's land adjoins the defendant's immediately on
the south, and the strip of land in contro-
versy lies along the north side, and is a part
of plaintiff's lot, as shown by the deeds un-
der which the parties acquired title. The
defendant is in possession of this strip, and claims to be
the owner of it. The action is to quiet the plaintiff's title
against this claim.

1. ADVERSE POS-
SESSION: pos-
session by mis-
take.

The defense is a general denial of plaintiff's title, and a
claim: (1) That the defendant has been in adverse pos-
session for more than ten years, under color of title and
claim of right; and (2) that, for more than ten years before
the commencement of this action, a division fence was erect-
ed as a boundary between the two lots, and that this fence
has been acquiesced in by both parties for more than ten
years, as the true boundary line; that, though this fence is
30 feet down on plaintiff's land, yet the plaintiff has ac-
quiesced in it as the true boundary line for the statutory

period, and is now estopped to claim that it is not the true boundary line.

One Pierson owns land immediately south of the plaintiff's. A road, known as the Lakeport Road, forms the east line of these lots. There is another road on the north line of defendant's land, used and traveled, but never laid out and established as a highway or a road. Plaintiff purchased his lot in September, 1903, and took possession in October, 1903, and built the fence which it is now claimed is the true line.

There is some conflict in the evidence as to the exact date when this fence was built. Some of the testimony shows it to have been built in the spring of 1907. Other testimony tends to show that it was built in the fall of 1906. Defendant purchased his land in October, 1906, and took possession on January 1, 1907. There is no claim of adverse possession on the part of any of defendant's grantors, nor is there any claim of acquiescence in any line prior to the building of this fence by the plaintiff in the fall of 1906, or the spring of 1907. The adverse possession, therefore, if any there is, must date from the taking possession by the defendant, and the acquiescence must date from the time of the building of this fence.

As said before, one Pierson owned the land immediately south of the plaintiff's. In 1911, a controversy arose between Pierson and the plaintiff, in which Pierson claimed that the plaintiff was occupying 30 feet along the north line of the lot owned by him, and a surveyor was called out, to ascertain by survey the true line between all these tracts. This survey was acquiesced in by the plaintiff, by the defendant, and by Pierson. The defendant contributed towards paying the expense of the survey. This survey developed the fact that the defendant was 30 feet too far south, and on plaintiff's land, and that the plaintiff was 30 feet too far south, and on Pierson's land. The correctness of this

survey is not disputed. It appears that the surveyor was one skilled in the art of surveying. Some effort was then made to adjust these differences between the parties. It finally resulted in a compromise or settlement between Pierson and the plaintiff, the plaintiff conceding that, under the survey, he was too far south, and on Pierson's land, as shown by the survey. Plaintiff, at the time, insisted that the defendant was just as much too far south of his line as he (the plaintiff) was too far south of Pierson's line.

There was some talk between the plaintiff and the defendant of compromise, which was never effected. The plaintiff, however, disputed defendant's right to hold this 30 feet which was in controversy, and the defendant maintained his right to hold it after these controversies arose, and finally insisted, when suit was commenced, that he had a right to hold it, either on the claim of adverse possession, or on the theory of acquiescence.

The trial court found that the plaintiff was the owner of the land, and that defendant had acquired no right to it, either by adverse possession or acquiescence, and entered a decree in favor of the plaintiff, as prayed, quieting the title to this strip of land in the plaintiff. From this action, the defendant appeals.

For a better understanding, and an explanation somewhat of the way in which the conditions arose, out of which this controversy developed, we will say that the record shows that the land owned by these three parties is in the west half of the southwest quarter of Section 5; that there is a road on the half-section line, running east and west through the section, and another road running south along the east line of these tracts, known as the Lakeport Road; and the defendant's land extends north to the half-section line. His deed gives him a strip of land enclosed as follows: Commencing at a point on the half-section line running east and west; running thence south, 20 rods along

the Lakeport Road; thence west, 40 rods; north, 20 rods; east to the point of beginning. Plaintiff's land commences on the Lakeport Road 20 rods south of the half-section line, extends south, 20 rods, west, 40 rods, north, 20 rods, east, 40 rods, to the road. As said before, on this half-section line running east and west, abutting defendant's property on the north, is a road, or street, traveled, but not laid out; and we take it from this record that this road is 60 feet wide. After these parties purchased, in measuring south to ascertain the location of the lots, the plaintiff started at the south side of this latter road, and then measured his twenty rods still farther south, and then west, north, and east again, as required by his deed. This brought, according to his measurement, the north line of his lot 30 feet south of where it should have been if it had been measured from the middle of the road, or from the half-section line, and then, of course, brought his lot 30 feet south on Pierson's. The mistake was in the starting point of measurement. The lot that plaintiff claims now, measured from the half-section line, would bring his land 30 feet north of where the fence was placed. Defendant's lot, measured from the south side of the highway, 20 rods, would bring defendant's lot to the fence; but, measured from the middle of the road, or the half-section line, the point from which his deed starts, it would bring defendant's lot 30 feet north of the fence; and we think this is where the mistake occurred, out of which the controversy arises.

So we start with the proposition that, under the deeds, this 30 feet properly passed to the plaintiff; that the building of the fence occurred through a mistake in measurement, in that the measurement was made from the south side of this east and west road, rather than from the half-section line.

This brings us to consider whether the plaintiff has lost his rights to this land, either by adverse possession or by

acquiescence. To secure a right to this strip, he must show either that for ten years he has been in open, adverse, continuous possession of this strip, under claim of right or color of title, or that the line has been established by acquiescence, at the point claimed. As to the first claim, it has frequently been held that possession is not sufficient. If the intention is only to keep the land which is covered by the deed, and, by mistake as to the true line, a party holds beyond the true line, his possession does not become adverse, and does not ripen into title, because the claim of right to hold must be as broad as the possession, in order to be adverse.

Although there is some testimony that the defendant intended to claim up to the fence, as built by the plaintiff, the record, considered as a whole, satisfies us that neither intended to claim beyond the limitations in his deed,—beyond the boundary of the land conveyed, as fixed in the deeds; that each claimed the right to the possession of the five acres covered by his deed, and no more. There is no evidence tending to show that, prior to the controversy which arose in 1911, the defendant made any claim to any other land than that which was described in his deed, except as this might be indicated by his possession. He could not honestly make claim to any other land, for he purchased no other. It may be assumed that, when plaintiff put in the fence (it will be noted that plaintiff purchased first, and built his fence), the defendant thought his line extended to the fence; but there is no evidence that he claimed any land beyond the boundaries of the description in his deed. The mistake of both was in measuring from the south side of the east and west road, instead of from the half-section line, and the occupancy of each was regulated by this mistake. The possession of the defendant, therefore, beyond the limit of the land purchased by him, of necessity cannot be said to be under claim of right. The claim of right cannot rest on mere possession

alone. It must be evidenced by some declaration or act of hostility to the true owner. His claim of right must be as broad as his possession, in order to make the possession adverse. It is true that this claim may not always evidence itself in words. It may be manifest by any conduct of the party which manifests an intention to make the hostile claim. Up to the year 1911, we find nothing in the record indicating an intent and purpose on the part of the defendant to claim adversely, except as such intent or claim may be manifested by possession. But, the record having disclosed to us that the intention of the defendant, in taking possession, was simply to hold so much of the land as was conveyed to him in his deed, and no more, and that the possession of the 30 feet south was through mistake in measurement, the possession cannot be held to indicate in itself, and is not sufficient in itself, to establish an intention to hold adverse to the plaintiff. This doctrine was first stated in *Grube v. Wells,* 34 Iowa 148, and has been consistently followed by this court in subsequent cases. *Jahnke v. Seydel,* 178 Iowa 363; *Jordan v. Ferree,* 101 Iowa 440, Division II; *Kahl v. Schmidt,* 107 Iowa 550. The authorities on this question since *Grube v. Wells,* supra, are abundant; and we think that, so far as plaintiff's title rests under the claim of adverse possession, his claim is ruled by these decisions. See, also, *Griffin v. Brown,* 167 Iowa 599. In this case, it was said:

"Where the intention in taking possession of a piece of land is to occupy only up to the true line, no occupancy beyond that is adverse; or, in other words, where one takes possession of a piece of land, and claims a right to occupy the same up to the true line only, and by mistake of measurement, or otherwise, takes possession beyond the true line and occupies it for the statutory period, he acquires no title by such occupancy."

It will be noted that the defendant did not build the

fence; that it was built by the plaintiff; that it remained where it was through a mistaken notion on the part of both that it was the true line between them; that neither intended to claim, or did claim, more land than was included within the limits of his deed. Any occupancy, therefore, beyond the true limits of the land described in the deed, was through mistake, with no intention to hold, at any time prior to 1911, any land other than contained in the deed; although the defendant occupied the land from the time of his purchase up to that date, and since. In no event have ten years elapsed since the hostile purpose of the defendant became known to the plaintiff. In fact, no hostile purpose was asserted, prior to the survey. It was in 1911 that it was first discovered that defendant was occupying land other than that covered by his deed, and that is the first time he declared a hostile purpose to hold more than his deed called for. It was then that he learned that his deed did not cover this 30 feet.

This brings us to a consideration of the second question: Is the plaintiff entitled to hold it under the theory of acquiescence?

It has frequently been held by this court that, no matter where the true line may be, if, between the properties, there is erected a fence which definitely marks a line dividing the two properties, and this line is acquiesced in and recognized by parties on either side as the true line, for more than ten years, then such line becomes the dividing line between

2. Boundaries: length of acquiescence.

the parties, without regard to government lines, and without regard to the lines fixed in the deed, and neither party can thereafter disturb it, and claim the dividing line to be other than that acquiesced in. This acquiescence must continue for the statutory period, in order to make it effectual in depriving one of rights in land to which, otherwise, he is entitled. In this case, the plaintiff built the fence. He built it under a mistake,—a mistake in measurement, as hereinbe-

fore indicated. The fence was built in the fall of 1906 or the spring of 1907. The mistake in measurement was discovered in 1911, when the survey was made. It was then ascertained that the defendant's land was 30 feet too far south; that, under the deeds, plaintiff was entitled to 30 feet north of the fence. We may say that this survey provoked the controversy; though suspicion of this fact existed, and provoked the survey. After 1911, it cannot be said that this plaintiff acquiesced in the line as the true dividing line. Both had learned differently. After that, plaintiff was insisting on his right to this strip. After that, he denied the fence as a dividing line between them. This is manifest from all the testimony. Therefore, the acquiescence, if any, did not exist after 1911. The fence was built not earlier than 1906. Five or six years only, therefore, had elapsed between the building of the fence and this dispute. So we say that the defendant did not make out a case of acquiescence for the statutory period. It is not necessary for us to enter, at this time, into a discussion of what constitutes acquiescence; for, even though there was acquiescence in this line as the true line in 1906, that acquiescence did not continue beyond 1911, about five years, and is, therefore, not available as a basis for defending against plaintiff's undoubted right to this land. As bearing upon this question, however, see *Miller v. Mills County,* 111 Iowa 654; *Klinkner v. Schmidt,* 114 Iowa 695; *Dwight v. City of Des Moines,* 174 Iowa 178, and cases therein cited; *Tice v. Shangle,* 182 Iowa 601.

Upon the whole record, we think the court was right, and its judgment is—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.