GEORGE L. O'DELL et ux., appellants, v. LORENCE HANSON et ux., appellees.

No. 47566.

(Reported in 42 N.W.2d 86)

April 4, 1950.

Stipe, Davidson & Hemphill, of Clarinda, for appellants.

James E. Hughes, of Lenox, for appellees.

HALE, J.—Plaintiffs are the owners of eighty acres in Section Three (3), Township Sixty-nine (69), Range Thirty-five (35), being described as the Northwest Quarter (NW ¼) of the Southeast Quarter (SE ¼) and the Northeast Quarter (NE ¼) of the Southwest Quarter (SW ¼) of said section. Defendants are the owners of eighty acres lying immediately north of plaintiffs' land and adjoining the same—both of said eighty-acre tracts running east and west and having a common boundary line. (Defendants' land is misdescribed in the record of the petition in this case, but correctly described and identified throughout the remainder of the record.)

On March 3, 1948, plaintiffs filed in the district court of Taylor County a petition in equity stating, in substance, the ownership of the respective tracts of the parties hereto, alleging that the line fence on the north side of plaintiffs' land is a woven-wire fence; that south of the wire fence and upon the real estate belonging to them (the plaintiffs) is a line of hedge trees about two feet south and parallel with the wire fence, which trees have been growing on plaintiffs' land for more than ten years last past. They allege that without the permission or knowledge of the plaintiffs the defendants trespassed upon plaintiffs' tract of land and wrongfully cut down or moved from plaintiffs' premises about one hundred twenty-five of said hedge trees that were grown up and standing on the east end of said hedge line, and the defendants assert their intention to continue until they have cut down all of said hedge trees. Plaintiffs claim damages therefor and ask an order requiring defendants to return to

plaintiffs all of said hedge trees so cut down from the hedge line and for writs of temporary and permanent injunction, and for further equitable relief.

In answer, defendants state that the woven-wire fence is not the boundary or division line, but that the boundary line between the tracts is the row of hedge trees, and that said hedge trees have been established and acquiesced in for ten years as the correct boundary or division line by the respective owners of the tracts of real estate, to the full knowledge of plaintiffs. Defendants allege that the wire fence was built on the land owned by defendants but deny it is on the boundary line between the tracts of real estate, but state such wire fence was built for the purpose of convenience of the former owners of these tracts of land and allege that the line of hedge trees constitutes the true and correct boundary line. They state that they did trim a part of the hedge trees with the knowledge and consent of the plaintiffs. Defendants further plead that due to the plaintiffs' knowledge and acquiescence in the facts related by defendants the plaintiffs are barred and estopped from claiming otherwise, and the defendants on their part ask for dismissal of plaintiffs' petition and that the hedge be established as the true and correct boundary.

In reply, the plaintiffs state the wire fence was constructed by the respective owners of the two tracts of real estate by agreement between the respective grantors, and subsequently by the plaintiffs and the defendants as the true boundary line, and the said row of hedge trees was treated as the property of the owners of the plaintiffs' premises. Plaintiffs deny that the trees were ever trimmed or cut with the knowledge or consent of either of the plaintiffs, deny acquiescence in the acts of the defendants, and generally deny defendants' statements in their answer.

By amendment to plaintiffs' petition, plaintiffs reiterate their claim as to the boundaries, claiming acquiescence, and asking, in addition to the relief asked for in the original petition, that the court enter its decree ascertaining and permanently establishing the two corners and boundary line between the tracts of real estate and the appointment of a disinterested surveyor with authority to make survey, hold hearing, take testimony

of witnesses, and report to the court as provided by section 650.7, Code, 1946. This amendment, on motion of defendants, was struck out.

There was trial to the court, which on October 22, 1948, entered its ruling in which it found for the defendants, and dismissed plaintiffs' petition. The court found that the hedge fence was the true partition line and the true boundary line between the land owned by plaintiffs and the land owned by the defendants, and further found that the plaintiffs are owners of the west eighty rods of said hedge fence, and the defendants are the owners of the east half of such fence, and dismissed all other allegations in the plaintiffs' petition and amendments thereto.

While various forms of relief are urged by the plaintiffs and various issues have arisen under the pleadings and the testimony, yet they all center about one question: Is the line of hedge trees or the wire fence the boundary line between the lands respectively owned by the plaintiffs and the defendants? Various errors are urged by the plaintiffs, but the answer to the above question will dispose of all or nearly all of the controversial questions.

It is asserted throughout the trial and not denied by either party that for some time in the past, by agreement between owners, the care and upkeep of the east half of the division line was in the defendants, and the other half of the division line between the eighties was in the plaintiffs. This was taken for granted and understood. There is very little dispute that the hedge fence or line of hedge trees was from some period before 1885 and up until 1918 treated and considered by the respective owners as the boundary line, but that in 1918, probably owing to the fact that many of the trees had been cut down or destroyed, a wire fence was built along the north side of said trees, at some places two feet or more from the trees that were then standing, at other places nailed to such surviving trees.

I. The first complaint made by plaintiffs, appellants herein, was that the court erred in sustaining the defendants' motion to strike the amendment to plaintiffs' petition applying for the appointment of a commission under the provisions of chapter 650, Code of 1946. Other grounds of the motion were that the amendment was filed without leave of court, did not

attempt to correct a mistake, and was not timely filed; that the action was not brought under chapter 650 of the 1946 Code, and therefore the issues raised by the amendment were not within the purview of the Code, with reference to the appointment of a commission to determine lost, destroyed or disputed corners; that the petition presents multifarious issues and that by reference to the issues heretofore tendered in the case the appointment of a commission would be a useless procedure.

The court sustained the motion on all grounds. The ruling of the court was correct. The action was not brought under chapter 650, Code of 1946. There was no necessity for the appointment of a commission.

II. There seems to be no reason to doubt that the issues here are triable de novo. Neither party contends to the contrary. Plaintiffs urge that they were entitled to some equitable relief. This is true only in the event that the woven-wire fence is decreed to be the boundary line.

III. The contention of plaintiffs is that the court erred in declaring the original hedge line constituted the true division line. This is the vital issue in the case. There seems to be no disagreement that for some years prior to 1885, and from 1885 up to 1918 the line of hedge trees was accepted as the boundary line, and the record shows that in 1918 Add Cabeen was the owner of the land now occupied by defendants, and that he was also the owner of the line of trees by agreement at sometime in the past with the owner of plaintiffs' eighty acres. The owners of the south tract (now plaintiffs) maintained and owned the west eighty rods. That is, the east half of the dividing line belonged to Cabeen and the west half to the plaintiffs' predecessor in title. It was recognized as the boundary line until about the year 1918. In that year the fence had proven insufficient as a barrier of stock and the wire fence was erected. This seems to have been with the consent of the owner of the plaintiffs' land who at that time was one Harry Combs, who lived on the place from 1918 to 1938. The hedge was cut by the Cabeens. Combs testified that he put some wire over the other wire that was already there—it all needed fixing at that time. He testified the hedge was not thick enough to turn livestock, and this is what they put the fence in for; that before the fence was put

up there was not enough hedge to turn stock. He testified: "Q. And you stated that the Cabeens put a wire fence in north of the old hedge line? A. Yes, sir. Q. Why did they do that? A. Well, they set it over there so they wouldn't have to dig holes in the stumps. * * * Q. During the time you were on the place, which did you consider the line fence, the hedge fence or the wire fence? A. I never thought anything about it. We just put the fence in. Q. Which did you consider? A. I suppose it would be the hedge. Q. The hedge fence you-considered that to be the boundary line between the two places? A. Yes."

Combs was a witness for the plaintiffs.

Add Cabeen, who, with his brother built the wire fence in 1918 or 1919, testified that the hedge was cut—"I tried to get it about a foot away from this hedge stump instead of setting it on top of them. We didn't want the hedge sprouts to grow up through the woven wire." At the time the hedge was cut in 1918 he lived on the north side of it and Combs on the south side. In answer to the question as to whether he agreed with anyone as to the location of the wire fence he stated: "We got together and did it that way, and settled it." He testified there was no agreement at any time to change the original fence line, and that he himself had no intention of changing the partition line. He stated that after the woven fence was put in and until he left in 1935 he knew of no claim being made that the woven-wire fence was the line and not the hedge line, and especially he stated that he never heard of any claim being made by the adjoining owner, Harry Combs, or anybody else.

We call attention to this testimony since the witnesses were the owners of the two adjoining tracts covering a period in which it is sought by plaintiffs to establish their claim of acquiescence. There was, of course, conflicting evidence of others having more or less acquaintance with the occupancy and use of the two tracts of land. We are satisfied that the evidence shows that the construction of the wire fence was for the purpose of a barrier and not a boundary, and also that it shows that it was placed where it was on account of the difficulty of erecting posts upon or among the stumps of the trees which had been removed. Also, if placed too close the hedge sprouts would interfere with the fence.

There was no evidence that either of the resident owners ever made any claim that there was any intention to abandon the hedge trees as the true boundary line, and that they so understood it. Furthermore, the testimony shows that Henning Hanson who purchased the north or defendants' farm in 1940 exercised acts of ownership to the east eighty rods of the hedge row by trimming the hedge on the north and south sides in the spring of 1941. So far as the record shows it was not until in 1947 that the plaintiffs or their predecessors in interest claimed ownership of the east eighty rods of the row. This brings it within the rule set out in Eggers v. Mitchem, decided by this court in November 1948 and reported in 239 Iowa 1211, 1216, 34 N.W.2d 603, 606, which is as follows:

■ "In the absence of other controlling circumstances, where two adjoining owners for ten years mutually acquiesce in a line definitely marked by a fence or in some other manner as the boundary between them, such line becomes the true boundary." Citing cases including Dwight v. City of Des Moines, 174 Iowa 178, 183, 156 N.W. 336, 338, wherein we said:

■ "Acquiescence must be by both parties to make it a line by acquiescence. Acquiescence is consent inferred from silence—a tacit encouragement. This involves notice or knowledge of the claim of the other party."

The Eggers case further cites 11 C. J. S., Boundaries, section 79, page 653, and quotes: " 'mere acquiescence in the existence of a fence as a barrier and not as a boundary is not such recognition and acquiescence as will amount to an agreement as to the boundary or establish it as the true line.' " See also Benjamin v. O'Rourke, 197 Iowa 1338, 199 N.W. 488; Davis v. Angerman, 195 Iowa 180, 192 N.W. 129; Griffin v. Brown, 167 Iowa 599, 149 N.W. 833; Boltz v. Colsch, 134 Iowa 480, 109 N.W. 1106.

We think the testimony shows that the true boundary line was established by the evidence as being the hedge row, as found by the district court, and that the plaintiffs failed to show a title by acquiescence; that such hedge row constituted the true line.

██ IV. We think that by our holding in regard to the location of the boundary fence we have disposed of the principal and determining fact in the case. There was raised, however, the question of estoppel. We see no ground, however, for maintaining such an issue. None of the elements of estoppel was established. The court correctly held the burden to prove and establish estoppel was upon the plaintiffs. Strict proof of all its elements is demanded. City Bank of Mitchellville v. Alcorn, 188 Iowa 592, 176 N.W. 628; Ross v. Ferree, 95 Iowa 604, 607, 64 N.W. 683, 684, where this court said:

██ " 'Estoppels must·be certain to every intent, for no one should be denied setting up the truth unless it is in plain and clear contradiction of his former acts and declarations.' " Cases cited by the plaintiffs are not based upon similar facts.

The defendants exercised acts of ownership and, as stated, made no representations and were under no duty to speak. Defendants at all times claimed the hedge as the boundary line and not only had no opportunity to speak, but the question of boundary, according to the record, had never been urged until defendants were stopped while trimming the hedge.

V. As stated, the question of ownership of the hedge was the principal and decisive question in the case. Having been, as we think, correctly decided by the district court, there was no occasion for equitable relief, no grounds for it, and there is no necessity for considering further demands or claims of the plaintiffs.

Many authorities are cited by the plaintiffs which it is unnecessary to review. They are, to a great extent, fact propositions, and it must be remembered that seldom the facts in .two cases coincide. Under the facts of this case our decision must be for the defendants.

We hold the court correctly held for the defendants.—Affirmed.

All JUSTICES concur.