CHARLES F. DEVINEY et ux., appellees, v. NELLIE HUGHES et al., defendants; MEREDITH W. ACKLEY, appellant.

No. 48177.

(Reported in 55 N.W.2d 478)

NOVEMBER 11, 1952.

G. L. Norman and H. F. Martin, both of Keokuk, for appellant.

Charles P. Beard, of Keokuk, for appellees.

HAYS, J.—This is an action, brought under the provisions of chapter 650, Code of 1950, wherein the trial court found that a boundary between certain city lots, other than the true one, had been acquiesced in for more than ten years and so established it. The line in question is between Lots 2 and 3, Block 6, Mason's Upper Addition to Keokuk, Iowa.

Bounded on the southeast by Eighth Street and on the southwest by Orleans Avenue, Lots 1, 2 and 3 lie consecutively in a northwesterly direction, each originally with a 50-foot frontage

on Orleans Avenue, and extending back 140 feet to an alley. Some years ago Lots 1 and 2 were divided. Defendant Ackley obtained the south, or front, 70 feet thereof in 1944. Defendants Hughes acquired the north, or rear, 70 feet in 1949, and plaintiff purchased Lot 3 in 1947.

Until sometime subsequent to 1924 Lots 1 and 2 were vacant. As early as 1919 the house now occupied by plaintiff was in existence. It stood, and still stands, an undisclosed distance to the north of Orleans Avenue and west of Lot 2. There was then, and is now, an open ditch or drain running from the house in a southeasterly direction to a tile which is located a short distance to the east of the true survey line between Lots 2 and 3. From there the tile runs to Orleans Avenue where it empties at a point about four feet east of the survey line. How far south of defendant Ackley's north line the tile starts does not appear in the record other than the statement of one or more witnesses that it starts "here", apparently pointing to some place on a chart or map which does not appear in the record.

In 1928 a survey was made and the dividing line between Lots 2 and 3 was established and marked on Orleans Avenue and on the alley. In 1929 a stone wall along the alley to the north of Lots 1 and 2 was built or repaired. It extended from Eighth Street to the established line between Lots 2 and 3. At a right angle to this wall a wire fence was erected along the survey line extending toward Orleans Avenue. While the record is not too clear, there is testimony that it extended to the avenue. In 1941 a picket fence was erected along the survey line from the avenue to the alley, which fence is still there. This action was commenced in 1950.

Plaintiff Charles F. DeViney testified that when he purchased Lot 3 the picket fence was there; that the ground on the Ackley side of the fence was higher than on his side and he assumed the fence was the line. It appears that sometime prior to the commencement of this action he had litigation with the owner of the land to the west of Lot 3 as to the boundary, claiming four feet beyond the apparent line, but was unsuccessful. It may be assumed from the record that from the survey line between Lots 2 and 3 to plaintiff's line on the north measures but 46 feet.

A Mrs. Griffey was a witness for plaintiff. She had lived on Lot 3 from 1924 to 1946. She states that there was then a fence extending from the alley to the tile. Sometime while living there she planted shrubs along the front of the lot and on her side of the tile; how close to the tile does not appear. In 1941, when the picket fence was put in, the shrubs along the front of her lot were taken out and she found them lying in her front yard. Sometime between 1928 and 1933 she had complained about the wire fence being on her lot. Beyond having a letter written by an attorney, protesting against the fence, nothing was done. She also stated that while living on Lot 3 a mulberry tree which stood on her lot was cut down; she has not been back to the place since she sold it.

Plaintiff also offers evidence to the effect that there is a stump of a mulberry tree standing a short distance to the east of the survey line between Lots 2 and 3.

Mrs. Mary W. Irwin was a witness for defendant Ackley. She now lives cater-cornered across the street and has lived there since 1896. Her parents owned Lots 1 and 2 from 1900 until 1922 or later. She states that there has always been a fence between Lots 2 and 3 at the place where the picket fence stands; that mulberry trees grew all along the line and it would be difficult to refer to any certain tree. There is also the statement of Mr. Wm. Dooley, who states he rebuilt the wall along the alley in 1928 and a fence from the alley to the avenue along the survey line. Defendant Ackley testified he had lived on the Hughes property from 1939 until he purchased the south 70 feet of Lots 1 and 2; from 1939 to the present time there has been no change in the fence lines; the drainage tile goes down on his side of the fence and has been there as long as he has lived there; that the tile ran from a low spot where the water drained from plaintiff's lot.

The trial court established the line as follows: "the boundary line between the parties for the front 70 feet of Lots 1 and 2 be established as the line marked by the tile drain, and that the boundary line for the rear 70 feet of said Lots 1 and 2 be established as the survey line." Only defendant Ackley has appealed.

Under the rule announced in Concannon v. Black-

man, 232 Iowa 722, 6 N.W.2d 116, and Eggers v. Mitchem, 239 Iowa 1211, 34 N.W.2d 603, this appeal is not heard de novo, but upon assigned errors. If there are substantial facts in the record to sustain the findings of the trial court its judgment must be affirmed. Both parties agree that the burden of proof rests upon the plaintiff, where acquiescence in a line other than the true one is claimed. As stated in 11 C. J. S., Boundaries, section 68: "Inasmuch as the ownership of land is affected so far as the agreed line varies from the true line, the proof of the agreed location should be clear."

Upon the question of the burden of proof and the quantity and quality of the proof appellee states in argument: "It is submitted that certain facts were established, *together with the circumstantial evidence which a view of the premises reveals* [the trial court viewed the premises], upon which the trial court justifiably based its finding of acquiescence." (Italics ours.) What facts were revealed by a view of the premises is not shown in, nor do they constitute a part of, the record.

Appellant assigns fourteen alleged errors which, however, may be grouped into two: (1) The record does not warrant or sustain the judgment. (2) The line established is indefinite and uncertain.

I. Does the record sustain the judgment of the trial court? Since this requires an examination of all the facts before the court the effect is in substance a de novo examination, at least as to the quantity of the proof, and we have therefore set forth the record at some length.

The rule is well established that if adjoining landowners occupy their respective premises to a certain line which they mutually recognize, they are precluded from claiming that the boundary thus recognized is not the true one. 8 Am. Jur., Boundaries, section 80; O'Dell v. Hanson, 241 Iowa 657, 42 N.W.2d 86. It is also well established that acquiescence which will establish a boundary line must be by both parties. It is a consent inferred from silence, a tacit encouragement involving notice or knowledge of the other party's claim; it exists when a person who knows that he is entitled to impeach a transaction or enforce a right neglects to do so for such a length of time that

under the circumstances the other party may fairly infer he has waived or abandoned his right. One cannot acquiesce in a line created by himself and bind another party to such acquiescence. It must be by both parties. Patrick v. Cheney, 226 Iowa 853, 285 N.W. 184; Dwight v. City of Des Moines, 174 Iowa 178, 156 N.W. 336.

Under the record, plaintiff, who owned Lot 3 since 1947, first complained about the line in 1951. So far as plaintiff's predecessors in title are concerned, the only complaint made to the owners of Lots 1 and 2 regarding the line was in 1933 when an attorney wrote some letters of protest. Mrs. Griffey states that at the time Ackley built the fence in 1941 she did nothing but mention it to an attorney. Accepting plaintiff's case at its full value, there is no substantial proof to the effect that any claim of ownership was made to any line other than the survey line. Mrs. Griffey says: "I always considered the tile to be the line." But this does not show acquiescence in the absence of a showing as to the knowledge, attitude and reaction of the other party.

Furthermore, the trial court rules out and ignores the testimony of Mrs. Irwin, stating in connection therewith: "In making these findings, the court is not unaware of the testimony of the witness Irwin; but her testimony, in the opinion of the court, is entitled to little, if any, weight because it is an opinion from observation alone and not based on any fact." An examination of the record shows that the witness Irwin is the only witness, on either side, who shows a continuous knowledge of the physical and visible facts relative to the boundary from 1896 to date. Her testimony stands undisputed, except by inference and what is not said rather than what is, that there has continuously been a visible division in the form of a fence along the true line since 1896. It certainly cannot be overlooked or brushed aside. We are unable to find any substantial proof warranting or sustaining a finding of acquiescence in a line other than the survey line, and the judgment of the trial court must be reversed.

II. Complaint is made that the line (the tile) established by the court is too indefinite and uncertain to constitute a boundary, and we find merit therein. The recognized rule is

that the judgment establishing the boundary must be sufficiently definite to run a line in accordance therewith. 11 C. J. S., Boundaries, section 120. This record shows an opening in a tile somewhere near the survey line and some undisclosed distance from Orleans Avenue. On Orleans Avenue, at a point some four feet east of the survey line, a tile empties. Presumably it is the same tile, but the course of the tile from one opening to the other is unknown—it may be straight; it may not. Only by opening the tile the entire length can the exact location be determined, so far as this record shows. Again we say, what a view of the premises disclosed to the trial court is not available to this court and constitutes no part of the record.

For the reasons above set forth the judgment of the trial court is reversed.—Reversed.

All JUSTICES concur.