GRACE D. ATKINS, appellant, v. JAMES J. REAGAN et ux., appellees.

No. 48371.

(Reported in 60 N.W.2d 790)

November 17, 1953.

Vincent E. Johnson, of Montezuma, for appellant.

Louden & Manly, of Grinnell, for appellees.

MULRONEY, J.—This is a boundary dispute between owners of adjoining residences in Grinnell presented by the quieting-title petition of the plaintiff, and the counterclaim of the defendants. The counterclaim admits defendants' house on the north side extends 10 feet north of the north line of their property, as that property is described in their deed, and therefore occupies the south 10 feet of plaintiff's lot. The counterclaim alleges defendants have title to said 10 feet by adverse possession, acquiescence and estoppel, and prayed for a quieting title decree in their favor as to the 10-foot strip.

At the conclusion of the trial the court held for defendants on the ground of adverse possession, fixing the boundary between the lots along the north wall of defendants' house, which extends over upon the property described in plaintiff's deed a distance of $9\frac{3}{10}$ feet. Plaintiff appeals.

Plaintiff had lived in her house for twenty-two years, part of the time as a tenant, and she acquired title by warranty deed

July 2, 1937. The house located on the lot to the south had stood in its present position since 1897. Plaintiff testified: "I purchased knowing there was something wrong out there but not giving it any serious thought." Defendants purchased their lot by deed from the board of supervisors April 4, 1939; and immediately improved the house by a new roof, new siding, new floors, new electric wiring, new plumbing, new furnace and other improvements, all at a cost of $3500. Much of the improvement was to that portion of the house that extended $9\frac{3}{10}$ feet over the lot line. These improvements were all made with the knowledge of plaintiff. She testified her driveway on the south side of her house was full of building materials when the improvements were being made and that the workmen used her water. The record shows defendants shoveled the snow and cut the grass up to plaintiff's driveway.

It is established without serious dispute that plaintiff knew defendants' house extended over her south lot line, from at least the date defendants moved into their house, if not before. In addition to her own testimony that she knew "something was wrong out there" when she purchased, there is the testimony of her neighbor on the north, Gladys Wisecarver, who said plaintiff told her she had known about this boundary-line dispute ever since defendants had moved into their house but she had not done anything about it because "she said she didn't like trouble." This testimony was undenied. In a letter written by plaintiff concerning this boundary trouble there is the statement: "I have known all through the years what my rights constitute * * *. I purchased first and kept still." Much of plaintiff's evidence consisted of the efforts she made over the years to have the city deed all or a portion of a 17-foot strip of land that the city owned which was adjacent to her lot on the north. She testified she sought this strip so she could give defendants a deed to the south 9 or 10 feet of her lot and "straighten out" the matter. This excellent solution failed though the record shows the council members considered the 17-foot strip worthless to the city and informally they agreed to deed it to plaintiff.

It is just as clear that defendants' occupancy of the south $9\frac{3}{10}$ feet of plaintiff's lot went unchallenged for ten years. We

need go no further into the record than plaintiff's letter to defendants dated May 24, 1949, in which she stated: "You have used my property without being molested for ten years and you did not come over and express gratitude." The defendants stated they never had any discussion about lot lines with plaintiff for more than ten years. Mr. Reagan said plaintiff never made any objections until after the letter of May 24, 1949.

There is evidence of actions after the letter of May 24, 1949, whereby plaintiff sought to interfere with defendants' use of the 9³⁄₁₀-foot strip but this was after the ten-year period. The present suit was filed August 5, 1952.

I. Quite probably the foregoing record establishes a case for defendants on the ground of adverse possession, as the trial court held, but it would seem to make out a plainer case in their favor on the ground of acquiescence. Acquiescence, which will establish a boundary line, exists when adjoining landowners occupy their respective premises to a certain line which they mutually recognize as the dividing line for ten years. Thereafter they are precluded from claiming the boundary line they have recognized is not the true one. Concannon v. Blackman, 232 Iowa 722, 6 N.W.2d 116; Vander Zyl v. Muilenberg, 239 Iowa 73, 29 N.W.2d 412; DeViney v. Hughes, 243 Iowa 1388, 1392, 55 N.W.2d 478, 480. In the last cited case we said acquiescence which will establish a boundary line "is a consent inferred from silence, a tacit encouragement involving notice or knowledge of the other party's claim; it exists when a person who knows that he is entitled to impeach a transaction or enforce a right neglects to do so for such a length of time that under the circumstances the other party may fairly infer he has waived or abandoned his right."

Applying the rule of the foregoing authorities to this case we find the acquiescence established by plaintiff's own testimony. She admits the defendants occupied to the line the trial court found, for a period of ten years. The record fairly shows that throughout this period plaintiff knew defendants' house was over the line, but, as she said, she did not molest them in their occupancy.

It is our conclusion the boundary line found by the trial court was established by acquiescence, and the decree of the trial court, dismissing plaintiff's petition and quieting title in defendants to the south $9\frac{3}{10}$ feet of the lot to the north, is affirmed.— Affirmed.

All JUSTICES concur.