W. W. TRIMPL et ux., appellees, v. VICTOR J. MEYER et ux., appellants.

No. 48738.

(Reported in 71 N.W.2d 437)

July 27, 1955.

Loth & Melton, of Fort Dodge, for appellants.

Rider & Bastian and L. F. Beisser, all of Fort Dodge, for appellees.

GARFIELD, J.—This is a dispute over the boundary line between adjoining residence properties in Fort Dodge. Since about September 1948 plaintiffs have owned and occupied as their home the south 30 feet of Lot 1 in Struble and Hellen's Subdivision of Block 6, Morrison and Duncombe's Addition to Fort Dodge. Since about September 1947 defendants have owned and occupied as their home the south half of said Lot 1 except the south 30 feet thereof. Defendants thus adjoin plaintiffs on the north.

The plat of the addition shows Lot 1 is 165 feet north and south by 58.5 feet east and west. Fifteenth Street runs north and south along the east side of Lot 1. Both properties face east toward the street. Thus according to the plat plaintiffs' frontage on Fifteenth Street is 30 feet, defendants' is 52.5 feet. Each property extends back (west) 58.5 feet from the street. An east-and-west alley about 20 feet wide abuts plaintiffs' on the south. There is a sidewalk along the west side of Fifteenth Street in front of both properties. A sidewalk also leads west from the street sidewalk to a grade door in about the center of the north side of plaintiffs' dwelling.

In October 1953, at defendants' request, the city engineer made a survey to locate the boundary between defendants' and plaintiffs' properties. He found the line about two feet south of where plaintiffs claim it is. When defendants started to erect a fence close to the line found by the engineer, plaintiffs commenced this suit in equity to enjoin its erection on the theory the line as claimed by them had been established by mutual acquiescence for more than ten years and also by estoppel. Following trial to the court in June 1954, there was a decree for plaintiffs from which defendants have appealed.

While we give weight to the trial court's decision our review in this and other equity cases is de novo. Rule 334, Rules of Civil Procedure. However, a special statutory proceeding under chapter 650, Code, 1954, like three of the cases plaintiffs have cited, is not reviewable here de novo and the judgment has the effect of a jury verdict which will be affirmed if there is sub-

stantial evidence to support it. Code section 650.15; Concannon v. Blackman, 232 Iowa 722, 723, 724, 6 N.W.2d 116, 117, and citations; Eggers v. Mitchem, 239 Iowa 1211, 1213, 34 N.W.2d 603, 605; DeViney v. Hughes, 243 Iowa 1388, 1392, 55 N.W.2d 478, 480; 11 C. J. S., Boundaries, section 88e, page 670.

Although we have given weight to the learned trial court's decision we are unable to reach the same result. We are convinced plaintiffs have failed to establish the boundary line as claimed by them either by mutual acquiescence or estoppel.

█ The burden of proof rests upon plaintiffs. Insofar as the boundary claimed by them varies from the true line the proof should be clear. 11 C. J. S., Boundaries, section 68; Eggers v. Mitchem and DeViney v. Hughes, both supra. Barnes v. Bishop, Iowa, 192 N.W. 254, 255, states that in the absence of proof of the true location of a boundary convincing evidence is necessary that a claimed boundary has been acquiesced in for ten years or more.

█ I. The rule of law upon which plaintiffs mainly rely is well settled, especially in Iowa. Where two adjoining owners for ten years or more mutually acquiesce in a line, definitely marked by a fence or in some other manner as the dividing line between them, such line becomes the true boundary although a survey may show otherwise and neither party intended to claim more than called for by his deed. Minear v. Keith Furnace Co., 213 Iowa 663, 666, 239 N.W. 584, and citations; Concannon v. Blackman, supra, 232 Iowa 722, 724, 6 N.W.2d 116, 117, and citations; Vander Zyl v. Muilenberg, 239 Iowa 73, 79, 29 N.W.2d 412, 415; Eggers v. Mitchem, supra, 239 Iowa 1211, 1216, 34 N.W.2d 603, 606. See also Atkins v. Reagan, 244 Iowa 1387, 1390, 60 N.W.2d 790, 791; Petrus v. Chicago, R. I. & P. R. Co., 245 Iowa 222, 228, 61 N.W.2d 439, 442. Many other Iowa decisions which recognize this rule are cited in the annotation 69 A. L. R. 1430, 1491, 1492, supplemented in 113 A. L. R. 421, 432.

█ Acquiescence in a boundary must continue for the statutory period of ten years in order to become effectual. Evert v. Turner, 184 Iowa 1253, 1260, 1261, 169 N.W. 625; City of Cedar Rapids v. Marshall, 199 Iowa 1262, 1269, 203 N.W. 932; annotations 69 A. L. R. 1430, 1500, 113 A. L. R. 421, 435; 11 C. J. S.,

Boundaries, section 80; 8 Am. Jur., Boundaries, section 80. See also decisions cited last above.

Code section 650.6 in effect requires a plea and proof of acquiescence "by the parties or their grantors for a period of ten consecutive years, * * *." Although this provision is in the chapter relating to the special statutory proceeding to which we have referred, we have no doubt it is declaratory of the law applicable here.

 It is doubtful at best that there is sufficient proof plaintiffs and defendants or their grantors acquiesced for any period in a definite boundary line. In any event we are clear there is insufficient evidence of such mutual acquiescence for the requisite period of ten years. This is fatal to plaintiffs' claim of a boundary by acquiescence.

There is no evidence the boundary in question has ever been marked by a fence or in any other manner except at the front and rear. The sidewalk that was in front of plaintiffs' property when they moved there in the fall of 1948 was put in when the house was built in 1912 or before. Plaintiffs replaced this walk in June 1949. The sidewalk in front of defendants' property was built at some other time, has a somewhat different appearance and the contractor who put it in stamped his name in the south end of the walk.

When plaintiffs moved in there were spirea bushes near the rear (west) line of their property which plaintiffs immediately cut down because they took up too much room. In the fall of 1953 plaintiffs built a north-and-south fence along their west line. They testify the fence is in the same location as the bushes were. Defendant Mrs. Meyer says the fence extends farther north. Plaintiffs claim and the trial court held the boundary is a straight line from the division between the sidewalks on the east to the north end of the fence on the west.

There is evidence that between the fall of 1948 and June 1953 plaintiffs and defendants acquiesced in a line about where the trial court fixed it. During this period of less than five years the adjoining owners mowed the grass, and shoveled snow from their sidewalk, up to such a line. There is testimony, denied by Mrs. Meyer, that she pointed out to plaintiffs the division in the front sidewalk as marking the boundary. It is not claimed this

was before plaintiffs purchased or occupied their property. Sometime after plaintiffs replaced their front sidewalk in 1949 they put in a clothesline, generally north and south, east of where the rear fence now stands. The north pole of the clothesline was set in concrete just south of the line as claimed by plaintiffs.

In the spring of 1951 defendants drove three stakes and connected them with rope along all or part of the claimed line, to protect new grass. The stakes and rope were there only a month or two. The testimony regarding the stakes and rope is of little if any aid to plaintiffs. Mrs. Meyer says and it is not disputed that someone, presumably Mr. Trimpl, moved the stakes farther north, she then moved them back south and Trimpl commented to her regarding what she did. This is evidence the line as claimed by plaintiffs was not then mutually acquiesced in but was disputed.

As we have intimated, there is no testimony plaintiffs and defendants mutually acquiesced in a definite boundary line before plaintiffs moved into their home. Mrs. Trimpl says this was October 23, 1948. It appears from plaintiffs' own evidence there has been no acquiescence by defendants in a line since about June 1953, a year before the trial. Throughout this year the location of the boundary has been in dispute. The only testimony of acquiescence in a boundary at any time other than 1948 to 1953 is that of Mr. Webster who from 1912 to 1914 owned and occupied the property plaintiffs now own. Webster's evidence is confined to the two years of his ownership.

Mr. Webster says he put up a clothesline probably 25 feet long with two posts in the area two feet wide now in dispute. The east post was north of his grade door and the clothesline ran west from there. When Webster purchased the property "this line was marked with a stake on the northwest corner, next to the dividing line." There is no other evidence regarding this stake or the clothesline Webster built. It is not shown either remained in place after he left in 1914. A division between the front sidewalks was visible during Webster's occupancy and he and the adjoining owner on the north cut the grass to that line. This is the substance of competent testimony by Mr. Webster that adds anything to plaintiffs' case.

As before indicated, there is no clear proof the parties hereto

or their predecessors in title have for ten consecutive years mutually acquiesced in the boundary line as claimed by plaintiffs. Indeed there is no clear proof of any such acquiescence for as long as seven years all told. And the first two of the seven years are separated from the rest by a gap of thirty-four years (1914 to 1948) as to which the evidence is silent.

In Evert v. Turner, supra, 184 Iowa 1253, 1260, 1261, 169 N.W. 625, and City of Cedar Rapids v. Marshall, supra, 199 Iowa 1262, 1269, 203 N.W. 932, claims of acquiescence in a boundary line were denied because acquiescence for the statutory period of ten years was not shown. A like situation exists here.

II. As we have stated, plaintiffs have not established their ownership of the disputed strip on the theory of estoppel. The decisions they rely on to support this claim are Minear v. Keith Furnace Co., supra, 213 Iowa 663, 669, 239 N.W. 584, 586, McCartney v. Schuette, 243 Iowa 1358, 1362, 54 N.W.2d 462, 464, and Snieders v. Brantsen, 245 Iowa 81, 60 N.W.2d 779, 781. See also Hart v. Worthington, 238 Iowa 1205, 1220, 30 N.W.2d 306, 314.

■ The theory of estoppel upheld in these decisions was expressed in this language in Herrick v. Moore, 185 Iowa 828, 832, 833, 169 N.W. 741, 742: "* * * where one has invaded the right of another, thinking he is within his own right, and that invasion is known to the other, *and the other stands by and sees him make valuable improvements upon the invaded territory,* under the supposition that it is a part of the possessions of the invader, equity will thereafter deny to the invaded the right to object to the invasion, * * *." (Emphasis added.)

The same thought is also expressed in this way in Herrick v. Moore, supra, at pages 837, 838 of 185 Iowa, page 744 of 169 N.W.: "* * * should a property owner see his neighbor, in good faith, assume a line to be the true line, and act upon that assumption, *and build valuable improvements,* and he makes no objection, and consents to the neighbor's so doing, the law steps in and says: * * * 'You are estopped.'" (Emphasis added.)

■ The doctrine of estoppel expressed in our decisions cited above comes pretty near to the rule of adverse possession although, by its application, one may be estopped before the ten

years essential to adverse possession have expired. Herrick v. Moore, supra, at page 832 of 185 Iowa, page 742 of 169 N.W.; Minear v. Keith Furnace Co., supra, at page 669 of 213 Iowa, page 586 of 239 N.W.; Hart v. Worthington, supra, at page 1220 of 238 Iowa, page 314 of 30 N.W.2d.

11 C. J. S., Boundaries, section 75, page 649, says of the theory of estoppel plaintiffs rely upon: "Where no permanent or substantial improvements have been made, the doctrine of estoppel cannot be invoked."

Of course the burden of proof on the issue of estoppel rests on plaintiffs. O'Dell v. Hanson, 241 Iowa 657, 664, 42 N.W.2d 86, 90. Plaintiffs' claim of estoppel rests largely on evidence that without objection from defendants, plaintiffs replaced the sidewalk along Fifteenth Street in front of their property south of the line as claimed by them, they built the fence along their rear (west) line and put in their north clothesline pole east of where the fence now stands. As previously explained, the north end of the fence and clothesline are within the disputed two feet of ground. There is no testimony either defendant knew of the construction of any of these improvements until it was completed. Any of them could readily be built within a few hours. So far as shown construction of all of them was commenced at the north end. Cost of the entire 30 feet of new sidewalk, put in because of notice from the city, was $60 or $65.

The north two feet of walk therefore cost $4 or a trifle more. Cost of the fence or clothesline does not appear. No doubt the north fence post and clothesline pole can readily be moved two feet farther south at nominal cost and little inconvenience.

There are at least two sufficient answers to plaintiffs' claim of estoppel. First, as stated, it is not shown defendants knew of any of these improvements before its completion or stood by and saw plaintiffs make any of them. Second, none of the improvements put upon the disputed area is of such nature or cost as to give rise to an estoppel under the doctrine plaintiffs invoke. Further, as previously explained, the fence was not built until the fall of 1953, after plaintiffs knew ownership of the strip was in dispute and that defendants were claiming it. See Snieders v. Brantsen, supra, 245 Iowa 81, 84–89, 60 N.W.2d 779, 781–783.

Quite in point on the issue of estoppel is Harris v. Lewis (Ladd, J.), 156 Iowa 413, 415, 416, 136 N.W. 674, 675, where plaintiff constructed a sidewalk along the front, and cement curbing and posts to which a wire was attached along the rear, of his property to a boundary line as claimed by him. In denying a claim of estoppel we say: "* * * as the improvements made by plaintiff were not induced by anything said or done by defendant, and as these were of small expense and might be readily removed without injury to the land, defendant is not estopped from claiming up to the true boundary even though considerably [8 or 10 feet] south of where this was supposed to be."

See also on the issue of estoppel Jordan v. Ferree, 101 Iowa 440, 70 N.W. 611; Lehman v. Smith, 40 S. D. 556, 168 N.W. 857, where the building of a fence on a disputed boundary line was held not to estop the adjoining owner.

There are many Iowa decisions involving a boundary marked by a fence. We know of none which holds the mere building of an ordinary fence without objection from the adjoining owner estops him from claiming land beyond the line of the fence.

III. Plaintiffs also argue briefly the boundary as claimed by them has been established on the theory of "practical location." This theory seems not to be presented in plaintiffs' pleadings although it was evidently called to the trial court's attention in argument. The court found it unnecessary to examine any issue other than acquiescence which it held was established. Both sides argue the theory of practical location and we assume, without so deciding, plaintiffs are entitled to urge it here.

None of our numerous decisions involving boundary disputes that has come to our attention gives recognition, by that name, to the doctrine of practical location. However, texts and precedents from several states indicate it is an accepted doctrine. 11 C. J. S., Boundaries, section 77a, cited by plaintiffs, states:

"To constitute a practical location of a line, the mutual act and acquiescence of the parties is required, and one adjoining owner cannot settle the location of the line without the participation, acquiescence, or consent of the other. It is in fact merely the result of an agreement or acquiescence between the parties shown

by the location of monuments and marks on the ground. When established by agreement it is a prerequisite that the true boundary line should be disputed, indefinite, or uncertain and that the parties should have the intent to settle the boundary line. If adjoining proprietors deliberately erect or maintain monuments or fences, or make improvements on a line between their lands on the understanding that it is the true line, it will amount to a practical location * * *.

"The doctrine of a practical location has been held to be equitable in its nature, arising from the principle of estoppel in pais * * *."

See also 8 Am. Jur., Boundaries, section 82; annotations 69 A. L. R. 1430, 1432, 113 A. L. R. 421, 422.

Several Minnesota decisions hold a boundary may be established by clear, positive and unequivocal evidence of practical location in one of three ways: acquiescence for the statutory period, express agreement, or estoppel. Thus in Minnesota "practical location" is a term applied to establishment of a boundary by any of three methods. See Benz v. City of St. Paul, 89 Minn. 31, 38, 93 N.W. 1038, 1039; Dunkel v. Roth, 211 Minn. 194, 300 N.W. 610; Simms v. William Simms Hdwe., Inc., 216 Minn. 283, 289, 290, 12 N.W.2d 783, 786, 787; Fishman v. Nielsen, 237 Minn. 1, 7, 8, 53 N.W.2d 553, 556, 557. The Simms and Fishman cases both say "the claim of practical location rests upon the principle of estoppel."

It is not contended, and there is no evidence, the boundary here in dispute was established by express agreement. We have held against the claims of acquiescence for the statutory period and estoppel. This seems to leave little if any room for the claim of practical location under any statement of that doctrine of which we know.

The contention there was a practical location of this boundary rests largely on Mr. Webster's testimony previously referred to that when he acquired what is now plaintiffs' property, "this line was marked with a stake on the northwest corner, next to the dividing line." It is said Webster testified the stake was due west of the break in the front sidewalk although the record does not

quite support the statement. However, we deem the evidence insufficient in any event to show a practical location of this boundary.

The testimony is silent as to when or by whom the stake at the northwest corner was put there. As stated, it is not shown it was there after 1914. Webster and the then owner of the property now owned by defendants did not receive their conveyances from a common grantor. For all that appears Webster's grantor put in the stake without even the knowledge of the then owner on the north.

Our holding plaintiffs have not established the boundary line as claimed by them by acquiescence, estoppel or practical location is the only matter we are called upon to decide. Defendants ask no relief and plaintiffs do not ask that the true boundary line, unless it is as claimed by them, be established. See Sieck v. Anderson, 231 Iowa 490, 497, 1 N.W.2d 647, 650; O'Dell v. Hanson, supra, 241 Iowa 657, 664, 42 N.W.2d 86, 90.—Reversed.

All JUSTICES concur.