Daniel Earl KENDALL and Nancy Kay Kendall, Appellees,

v.

Clement C. LOWTHER and Irene Lowther, Appellants,

and

Larry E. Unash and Joan L. Unash, Appellees.

No. 83–290.

Supreme Court of Iowa.

Sept. 19, 1984.

Henry E. Nathanson, Cedar Rapids, for appellants.

Dennis J. McMenimen and Richard G. Hileman, Jr. of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellees Daniel Earl Kendall and Nancy Kay Kendall.

John M. Heckel of Holden, Steggall & Heckel, Cedar Rapids, for appellees Larry E. Unash and Joan L. Unash.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER and WOLLE, JJ.

WOLLE, Justice.

This quiet title action concerns a land survey gone awry. Although the parties to this appeal vigorously dispute most of the facts and all of the legal theories which other parties have advanced, they agree that a land survey obtained by defendants Clement and Irene Lowther from surveyor Florus Brummer was seriously inaccurate and did not correspond to the legal descriptions by which Lowthers conveyed two parcels of adjoining real estate. To resolve the boundary dispute that resulted, the families who purchased those parcels retained counsel, bought their own surveys, and ultimately became embattled in this quiet title litigation. Both neighbors, the Kendalls and Unashes, made claim in the action to a triangular plot of land between their rural homes, and they also made claim for damages against the surveyors who made the errors and the Lowthers as grantors. The trial court's decree established a boundary line between the properties, quieted title in accordance with that decreed boundary, and found the surveyor Brummer and the Lowthers liable for damages to both neighbors. Only the Lowthers have appealed. Although we modify in one respect the damage award to Kendalls, we otherwise affirm the decree as modified, concluding that in all other respects the trial court fairly and equitably decided each of the issues raised by Lowthers in their appeal.

I. *Background Facts.*

The trial court correctly tried this quiet title action as an equitable proceeding. *See Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 886 (Iowa 1981); *Helms v. Helten*, 290 N.W.2d 876, 879 (Iowa 1980). Our review of the decree is de novo on all issues. *Id.* We give weight to the fact-findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App. P. 14(f)(7).

The following rough sketch illustrates, in simplified form, the scene of this boundary dispute.

In 1973 Clement Lowther, a licensed real estate salesman, and his wife Irene Lowther bought 36 acres of rural property south of Cedar Rapids in Linn County, and they moved into a farmhouse on the property. Lowthers then hired Florus Brummer, a licensed surveyor, to survey the entire 36 acres.

In 1975 the Lowthers decided to build a new home to the west of their farmhouse. They hired Brummer to measure out a lot and provide an appropriate legal description for the property. This property is referred to as the Kendall property because it is now owned by plaintiffs Daniel Earl Kendall and Nancy Kay Kendall (Kendalls). The Lowthers built a new home on this property, then sold it in 1976 to Richard and Linda Nischwitz [Nischwitzes], who thereafter sold it to Kendalls. The description of the property which Lowthers used in the deed of conveyance was a

metes and bounds description obtained from Brummer, and the same description was subsequently used when Nischwitzes in 1978 deeded the property to Kendalls. That description was:

That part of the East 110 feet of the West 753.5 feet of the South 940 feet of the Southwest Quarter of Section 6–82–6, Linn County, Iowa, lying Northerly of the public road.

Brummer testified, and the trial court found, that when he provided that description to the Lowthers he told them that the survey was not made as accurately as it could be, since it was only a location survey, and that it should not be relied upon for purposes of conveying title. Lowthers denied being cautioned by Brummer about the survey, but the trial court in its decree noted:

Although defendant Lowther disputes this, the court finds Mr. Brummer's testimony to be credible on this matter.

We find that Brummer told Lowthers that a description sufficient for a deed would be more expensive and would entail much more work than the location survey he had performed for them. Brummer's testimony on this matter is corroborated by his charge of only $40 for the location survey and $20 for the legal description even though, according to the evidence, a survey adequate for transferring title would have cost much more. Subsequent title problems and substantial litigation expenses for all parties can be traced directly to Lowthers' penny-wise and pound-foolish attempt to obtain a cut-rate survey and legal description.

The parties to this appeal do not disagree about the mistakes Brummer made in performing survey work for Lowthers. First, Brummer placed the northwest corner marker for the Kendall property too far to the west, so that it intruded approximately 40 to 45 feet onto the real estate owned by the Janeys whose farm lay along the west boundary of the Kendall property. Secondly, he actually measured on the ground a distance of only 100 feet between the northwest and northeast corners of the

Kendall property even though he wrote down on the legal description that the distance was 110 feet. Because of these two mistakes in the Brummer location survey, the parties received the mistaken impression that the Kendall property was located about 40 to 45 feet further west at the north boundary of the property than would accord with the legal description. Subsequently the parties found that when the Kendall west and east property lines were moved east to accord with the legal description used by Lowthers in their deed of conveyance, the Kendall property overlapped and included part of the farmhouse which was located on the property retained by the Lowthers.

When Nischwitzes purchased from Lowthers the property which they later conveyed to Kendalls, Mr. Lowther and Mr. Nischwitz walked the boundaries of the property and Mr. Lowther pointed out the location of pins at the four corners of the parcel as Brummer had surveyed it. Because of Brummer's mistake, however, the pin marking the northwest corner was well to the west of the Janey property line. Mr. Nischwitz thereafter placed a fence and wooden post along a portion of his property's east boundary, running in a roughly north and south direction approximately five feet west of the Lowther farm house. Both Lowthers and Nischwitzes believed that the fence was approximately on the Nischwitzes' (later Kendalls') east boundary.

In 1976 Lowthers hired Brummer to survey and stake boundaries surrounding their farmhouse so they could obtain a home improvement loan. Brummer used the stakes he had placed on the east boundary of the Kendall property as the west boundary for the Lowther farmhouse property, and he set pins in all four corners.

In 1978 Nischwitzes sold their property to Kendalls. Thereafter Mr. Kendall found two or three of the corner pins previously set by Brummer, but the northwest corner pin was never located.

Later in 1978 the Lowthers sold their improved farmhouse and staked property

to Larry and Joan Unash (hereinafter Unashes). In the process Lowthers proceeded to subdivide the remainder of the land they had purchased in 1973, and they hired licensed surveyor Archie Conklin to survey and create a plat known as Meadowood First Addition, with lot one being the Unash property. Conklin's employees located the three existing pins at the corners of the Kendall property but could not locate a pin at the northwest corner. Conklin undertook to reestablish the monumented survey previously performed by Brummer, then used the east boundary of the Kendall lot as a west boundary for the plat of the Unash property.

While Conklin was performing surveying work on the Unash lot, Kendalls became alarmed about the width of their property and hired Brummer to resurvey its boundaries. It was while performing this work that Brummer discovered the two mistakes he had made in his original location survey performed for Lowthers. Because of these errors, Brummer undertook a new survey, this time following the legal description in the Lowthers' deeds. The effect of this new survey was to rotate the west and east boundaries of the Kendall property in a mostly easterly direction, around the southwest corner of the Kendall property as an axis, so that the Kendall's west boundary would line up with the east boundary line of the Janey tract. As a result, the east boundary of the Kendall property was moved so far to the east that it overlapped about 10 feet of the Unash farmhouse and created the disputed (overlapping) area between the Kendall and Unash properties.

Kendalls, Unashes and Lowthers first attempted to reach a compromise settlement of the boundary problem, but without success. Thereafter Kendalls brought this action in equity against Unashes to quiet title to the disputed area between their two properties (see rough sketch). Kendalls and Unashes also made claim against Lowthers and the surveyors for money damages, including attorney fees and other costs of litigation. Kendalls and Unashes alleged that the surveyors had been negligent and that Lowthers had been negligent and breached covenants of title in their deeds.

After a several-day trial, the trial court found that although Kendalls had the superior legal title to the disputed property, Unashes had a compelling equitable interest in that portion of the property which overlapped what had been monumented as Unash's property, including the house which was overlapped by about 10 feet. The trial court therefore resolved the boundary dispute by quieting title to the disputed property in the Unashes, finding:

> The Unashes have cared for, maintained, and been in actual possession of their lot as monumented since their purchase from the Lowthers.

.    .    .    .    .

> To quiet title in accordance with the legally described property contained in the Kendall and Unash deeds would result in either great expense or inequity to the Unashes. In the event this court were to quiet title to the disputed property in Kendalls, Unashes could be required to remove their home from the Kendall property. Although the Kendalls had the superior legal title to the ground described in their deed, including the portion east of the west line of Meadowood Estates Lot 1 as monumented, the Unashes have had color of title to said property based upon their actual possession and have a superior equitable right to said property.

The court also found that Lowthers had breached covenants of title in their deeds to Nischwitzes, Kendalls and Unashes, and that Lowthers and the surveyor Brummer were negligent. Brummer and Lowthers were found liable to Kendalls for $3,737.74, representing surveying costs and value of the property lost to Unashes, and $14,056.37 representing attorney fees and court costs. Brummer and Lowthers were found liable to Unashes for $3,910 in attorney fees they incurred in defending against the Kendall lawsuit.

The surveyor Brummer has not appealed, so no issue is presented concerning his

liability to Kendalls and Unashes. The Lowthers, however, have appealed from the trial court's decree and raised a number of issues which are separately addressed.

## II. *Reformation.*

In challenging the trial court's decree Lowthers first contend that the court should have reformed the deeds by which the Kendall and Unash properties were conveyed by Lowthers to their grantees. They urge that reformation was the proper means of resolving this boundary problem, because the parties who transferred the Kendall property (first Lowthers to Nischwitzes, then Nischwitzes to Kendalls) were mutually mistaken about the size and shape of the property being conveyed. Lowthers contend that the intention of all parties to the conveyances can clearly be ascertained in the light of what was intended by no one. According to their argument, Lowthers certainly did not intend to convey part of the Janey property, since it did not belong to them; and Lowthers certainly did not intend to transfer as part of the Kendall property a portion of the farmhouse on the Unash lot, because that is where Lowthers were living. Lowthers urge that the deeds be reformed because the grantors and grantees all intended that the Kendall property would include only the real estate located between the Janey property line and the monumented line west of the farmhouse.

■ Reformation may sometimes be appropriate to correct a mistake in a deed. A deed that incorrectly describes the property conveyed may be reformed before a breach of covenant of warranty action is considered. In 7 G. Thompson, *Commentaries on the Modern Law of Real Property* § 3189, at 334–35 (1962), the author states:

> When by mistake the deed describes land other than that intended, it should be reformed before any action is had upon the convenants. The grantee's cause of action to reform the deed is personal to him, and not a covenant running with the land, and will not there-

fore, without apt words of assignment, pass to a purchaser from the grantee under a deed which describes the same land described in the deed to his grantor. The grantor in a warranty deed which either by fraud or mistake embraces lands not intended to be conveyed may have the deed corrected, for the law will not impose upon him the hardship of defending the title to lands to which he had no title and which were improperly included in his deed.

(footnotes omitted). *See also Wilden Clinic, Inc. v. City of Des Moines*, 229 N.W.2d 286, 289 (Iowa 1975) ("[T]he proper relief for a mutual mistake of a material fact in a written instrument is reformation of the instrument to reflect the true intent of the contracting parties.").

■ The conditions for reformation, however, have not been met in this case. One who seeks reformation of a deed has the burden of establishing by clear and convincing evidence that the deed does not reflect the true intent of the parties, either because of fraud or duress, mutual mistake of fact, mistake of law, or mistake of one party and fraud or inequitable conduct on the part of the other. *Montgomery Properties Corp. v. Economy Forms Corp.*, 305 N.W.2d 470, 474 (Iowa 1981); *Poulsen v. Russell*, 300 N.W.2d 289, 299 (Iowa 1981). The person seeking reformation must also establish that the true intention of the parties which would be reflected in a reformed document constituted an undertaking that the parties had the power and capacity to perform.

■ Lowthers have failed to satisfy both conditions. They have not shown by clear and convincing evidence precisely what legal description was intended by themselves and their grantees, first Nischwitzes and thereafter Unashes and Kendalls. The parties certainly did not intend to transfer land belonging to the Janeys, yet when Brummer first staked the Kendall property the parties apparently thought Lowthers owned part of what is now known to be Janey property. Moreover, it is self evident that the deeds could not be reformed

to show transfer of part of Janeys' property, since Janeys are not parties to this action and could not be deprived of their own real estate by reason of a surveyor's error in a subsequent transaction.

■ The remedy of reformation of an instrument is not absolute but lies within the sound discretion of the court of equity and depends upon whether the remedy is essential to the ends of justice. *Kufer v. Carson*, 230 N.W.2d 500, 504 (Iowa 1975); *Akkerman v. Gersema*, 260 Iowa 432, 440, 149 N.W.2d 856, 861 (1967). Lowthers were not entitled to reformation either on the strength of the evidence presented or on any legal principle governing boundaries.

> If the mistake of the parties in the conveying or leasing of property is in the identity of the property itself, reformation cannot be had, for there has been no meeting of the minds of the parties. While reformation may often be had to correct mistakes in defining the boundary of lands conveyed so as to identify the lands intended, it may not be had to pass other lands from those intended to be bought and sold, notwithstanding a mistake in pointing out the lines, since reformation under these circumstances would be inequitable and unjust.

66 Am.Jur.2d, Reformation of Instruments § 53 (1981) (footnotes omitted).

The trial court correctly refused Lowthers' request that the deeds be reformed.

### III. *Practical Location.*

Lowthers also urge upon us the doctrine of practical location, contending that the Kendall-Unash boundary should be fixed by the 1976 Brummer location survey. They argue that even though that inaccurate survey marked the boundary many feet west of the boundary described in the deeds, the parties treated that monumented line as their boundary and it thereby became the true location for conveyance purposes. They further contend that if that was the true line at the time of conveyance, Lowthers breached no covenant of warranty in conveying the property to their grantees.

■ The doctrine of practical location, as recognized and defined in Iowa cases, is grounded on principles of express agreement, estoppel and equity. *Trimpl v. Meyer*, 246 Iowa 1245, 1253–54, 71 N.W.2d 437, 441–42 (1955). Under Iowa law the doctrine must carefully be distinguished from the closely related doctrine of acquiescence. Iowa Code section 650.6 (1983) provides as a prerequisite to establishing boundaries by acquiescence that "such have been recognized and acquiesced in by the parties or their grantees for a period of ten consecutive years." Acquiescence does not fit the facts of this case because the Kendall and Unash properties have been divided by a boundary for fewer than ten years.

■ For a boundary to be fixed by practical location, the true boundary must first be disputed, indefinite and uncertain, and the parties must have the intent to settle the boundary line in dispute. *Trimpl v. Meyer*, 246 Iowa at 1254, 71 N.W.2d at 442. In addition, the grantors and grantees involved must all be aware of a boundary which is clearly marked on the land and which is evident or pointed out to them at the time of the conveyance. The marked boundary will then control if the parties accept that marked boundary by their words or actions which amount to express approval of the marked boundary. *Schauland v. Schmaltz*, 252 Iowa 426, 430, 107 N.W.2d 68, 71 (1961); *Trimpl v. Meyer*, 246 Iowa at 1254, 71 N.W.2d at 442.

■ The doctrine of practical location is inapplicable to the facts in this case for several reasons. At the time Unashes and thereafter Kendalls acquired their properties, they were unaware that the boundary between them was indefinite or in dispute. To the contrary, they had reason to believe that their deed descriptions, which were mutually consistent, were also compatible with the few markings of a boundary between their properties. They had no intent to settle a dispute at that time because

they knew of none. Secondly, the boundary according to the inaccurate Brummer survey was not clearly marked out on the land. Finally, Lowthers have not shown by evidence in this record that their grantees, by their words or conduct, entered into any form of express boundary agreement prior to or at the time of Lowthers' conveyances to them. *See Trimpl v. Meyer,* 246 Iowa at 1254, 71 N.W.2d at 442.

We conclude that the trial court properly rejected the contention that the boundary should be established in accordance with the doctrine of practical location.

In rejecting Lowthers' position on the issues of reformation and practical location we necessarily affirm that portion of the decree in which the trial court decided where the boundary lying between the Kendall and Unash properties should be located. Lowthers have offered no other theory for changing the boundary fixed by the decree, and neither Kendalls nor Unashes have appealed from that portion of the decree. Left to be decided is the question whether the decree not only quieted title fairly and equitably but also fairly and equitably determined the Kendall and Unash damage claim against the Lowthers.

IV. *Damage Awards.*

At the core of Lowthers' appeal is the trial court's award of damages both to Kendalls and to Unashes. Ironically, the Kendall-Unash boundary line, which was fixed by the trial court for the purpose of equitably quieting title in each neighbor, may well be identical to the boundary line which Lowthers asked the court to fix by reformation or by practical location. Lowthers, of course, urged those theories in an attempt to weaken the Kendall and Unash claims for monetary damages; Lowthers were attempting to establish that their grantees knew and intended that a marked line between their properties was their boundary at the time they purchased their properties. The trial court, however, found that both Kendalls and Unashes were entitled to recover damages not only from the surveyor Brummer because of his

negligence but also from the Lowthers based on breaches of the covenant of warranty of title in their deeds conveying the Kendall and Unash properties.

Lowthers contend that the trial court erred in finding that they breached the covenant of warranty in their deeds, and they also protest the allowance of attorney fees and litigation expenses as damages. In separately addressing each of these issues concerning the judgments entered against Lowthers for damages, we are mindful that our review is de novo, and that equity jurisdiction permits reach and flexibility necessary for working out the equities among the parties. *Moser v. Thorp Sales Corp.,* 256 N.W.2d 900, 907 (Iowa 1977).

A. *Breach of Covenant.* Lowthers first contend that neither the Kendalls nor the Unashes established a right to recover from them for breach of warranty.

■ The Lowthers' warranty deed to the Nischwitzes, like the subsequent deed to the Kendalls, contained the following covenant:

And we do hereby covenant for ourselves, our heirs and personal representatives with the said above named Grantees and their assigns and the heirs and assigns of the survivor, that we are lawfully seized of the said *premises,* . . . *and that we will forever* WARRANT AND DEFEND *the same against the lawful claims and demands of all persons.*

(Emphasis added). Lowthers' deed of conveyance to the Unashes contained a substantially similar covenant:

. . . and said grantors Covenant to Warrant and Defend the said premises against the lawful claims of all persons whomsoever, except as may be above stated.

Such a covenant of warranty, the principal covenant found in most deeds, constitutes an agreement by the grantor that upon the failure of the title which the deed purports to convey, either for the whole estate or part only, the grantor will pay compensa-

tion for the resulting loss. *See generally* 20 Am.Jur.2d, Covenants, Conditions and Restrictions §§ 43–53 (1965).

Lowthers contend that Kendalls were not damaged by any breach of covenant because they were not actually evicted from their property. In *Eggers v. Mitchem,* 240 Iowa 1199, 1201–02, 38 N.W.2d 591, 592 (1949), upon which Lowthers rely, our court decided that a grantee should not be allowed to recover on covenants of warranty in a deed when the persons who caused a partial eviction had no lawful or paramount title. We there said:

It is generally recognized that an eviction is necessary to constitute a breach of warranty of title or for quiet enjoyment; (citations omitted). But there need not be an actual expulsion of the grantee. A constructive eviction is sufficient. (Citations omitted).

The facts here are distinguishable from *Eggers.* Although Kendalls were not evicted from all of their property, they were evicted from and lost title to the disputed property along their east boundary, title to which was quieted in Unashes. The Unashes' claim was based on what the trial court correctly described as a superior equitable title. It makes no difference that Kendalls had been deeded legal title to that property based on the legal description in the Lowther and Nischwitz deeds. The Unashes' title was what the *Eggers* case described as a paramount title—"one which prevails in an action or is successfully asserted." *Id.*

A mere discrepancy in the amount of land conveyed by deed is not, in itself, sufficient to constitute a breach of warranty of title. *See Kitzman v. Carl,* 133 Iowa 340, 341, 110 N.W. 587 (1907). Here, however, the trial court's decree effectively evicted Kendalls from a substantial part of the property described in their deed. As a result Kendalls' property is not only smaller by more than one-fourth of an acre but is irregularly shaped, not rectangular as in their deed. The trial court correctly held Lowthers liable to Kendalls for breach of covenant of warranty.

B. *Unashes Recovery For Breach of Covenant.* Neither do we find merit in Lowthers' contention that Unashes should not have been awarded their attorney fees as damages for breach of covenant of warranty. Reasonable counsel fees may usually be recovered by the person who must defend in court the title covenanted. 7 G. Thompson, *Commentaries on the Modern Law of Real Property* § 3204, at 386 (1962 ed.). It is true that ordinarily a grantee cannot recover for breach of a covenant of warranty when the grantee has successfully defended the title. But this case has exceptional facts. Although Unashes suffered no loss of property as a result of the decree, they were forced to defend their title against the Kendalls' quiet title action. Kendalls presented a tenable, albeit unsuccessful, claim to a portion of the property Unashes were occupying, including the farmhouse which was their home. The Kendall claim was based on a superior legal title. Only by virtue of the lawsuit and decree was the Unash equitable title found to be paramount to the Kendall legal title. Consequently the trial court properly awarded Unashes recovery of their attorney fees and expenses incurred in defending this action, based on the theory that Lowthers had failed to warrant and defend the premises against the Kendalls' claim which was based on a superior legal title. *See Meservy v. Snell,* 94 Iowa 222, 226, 62 N.W. 767, 769 (1895) (award of attorney fees for breach of covenant "absolutely necessary to protect the real against the apparent title").

We also find persuasive the Unashes' alternative contention that they should recover their attorney fees from Lowthers because it was Lowthers' negligence in failing to procure a proper survey and deed description that thrust them into this litigation. That contention is consistent with a well-recognized exception to the general rule that attorney fees may not ordinarily be recovered by the prevailing party in a civil action. As we said in *Turner v. Zip Motors,* 245 Iowa 1091, 1098, 65 N.W.2d 427, 431 (1954):

[I]f through the tort of A, B is in good faith involved in litigation with C, the exception comes into play, and B may then recover the reasonable value of his expense for employment of counsel, and other proper items, from A.

*See also First Fiduciary Corp. v. Blanco,* 276 N.W.2d 30, 34 (Minn.1979) (recognizing right to recovery of attorney fees in action based on breach of covenant in warranty deed).

We find fair and equitable the trial court's award to Unashes of their costs incurred in defending their title to the land which was placed in jeopardy in this action.

■ C. *The Kendall Damage Award.* Lowthers contend that the trial court erred in including in its damage award to the Kendalls the sum of $14,056.37 representing attorney fees and $844.24 representing payments to expert witnesses. They first contend that Kendalls did not bring the action in good faith and therefore no attorney fees or other costs of defense should have been included in the damage award to the Kendalls. They also challenge two specific portions of the damage award, contending that the amounts awarded for expert witness expenses and for attorney fees were excessive.

On the question whether the action was brought in good faith, we find no merit whatsoever in Lowthers' position. Lowthers complain that Kendalls had taken an unreasonable bargaining position during pre-suit settlement discussions, but Kendalls had no duty to accept Lowthers' settlement proposals. While we encourage parties to negotiate fair settlements, we will not penalize those who prefer a final judicial determination of their rights.

■ We also find no merit in Lowthers' complaint that the trial court should have applied Iowa Code section 622.72 (1983) and limited to $150 per day the expert witness fees and expenses awarded to Kendalls as damages. The cited statute applies only to the determination of taxable court costs. When costs of defense are properly included in a damage award, those costs need not necessarily be limited to the amount which could be assessed as court costs to a losing party. We are satisfied that the amount of $844.24 which Kendalls paid to their expert witnesses was a fair and reasonable cost incurred by them in defending the title to their property.

■ We agree with Lowthers on their final challenge to the decree. The trial court allowed as damages the full amount of attorney fees which Kendalls were billed by their counsel, even though the itemized statement of fees shows that not all of the services related to the title problem. A substantial portion of Kendalls' attorney fees were incurred for services related to the Kendalls' claims for damages against not only the Lowthers but also the Nischwitzes and surveyors who were defendants in this action.

On our de novo review of the evidence, we find that the Kendalls' damage award should only have included the sum of $6,500 for attorney fees incurred in connection with the defense of Kendalls' title to the property. The remainder of the fees included in that bill, $6,243.50, represented services incurred in connection with other issues that were litigated.

Kendalls have also requested that we include as damages their attorney fees on appeal. We deny that request, because this appeal has concerned primarily Lowthers' attempt to reduce or eliminate the trial court's award of damages, not those portions of the decree in which the trial court fixed a boundary line and quieted title accordingly.

The decree of the trial court is therefore modified by reducing from $17,794.11 to $11,550.61 the amount of Kendalls' total judgment against the Lowthers for damages. The decree is otherwise affirmed.

AFFIRMED AS MODIFIED.