**In re The MARRIAGE OF Peggy Jean NIELSEN and Randall Eugene Nielsen**

**Upon the Petition of Peggy Jean Nielsen, Petitioner– Appellant,**

**And Concerning Randall Eugene Nielsen, Respondent– Appellee.**

No. 08–0381.

Court of Appeals of Iowa.

Nov. 13, 2008.

---

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

Randall E. Nielsen, Mason City, appellee pro se.

Considered by HUITINK, P.J., and VOGEL and EISENHAUER, JJ.

EISENHAUER, J.

Peggy and Randall Neilsen, the parents of three sons, divorced in January 1998. In May 2006, Randall sought a modification which was granted in February 2008. Peggy appeals three issues. First, Peggy argues the court erred in utilizing her earning capacity instead of her actual earnings when determining Randall's child support obligation. Second, Peggy appeals the court's placement of a judicial lien on her house. Finally, Peggy argues the court should have granted her request for one-half of her trial attorney fees. We reverse and remand with instructions.

## I. Background Facts and Proceedings.

In 1998, Peggy, a homemaker without a college degree, was awarded physical care of the children and desired to remain in the family home. Randall, an attorney, was ordered to pay child support. Randall paid the child support to the clerk of court by providing two checks each month. One check was payable to the bank for the home's mortgage principal, mortgage interest, taxes, and insurance. Randall received child support credit for this check and the clerk of court mailed this check to the bank. Randall has been living with Jill Fortney in her mortgage-free home since 1998. Randall utilized the income tax deductions for the mortgage interest and taxes he paid through the child support process. The second child support check, payable to Peggy, was for the difference between the child support obligation and the bank's payment.

For five years Peggy worked for the Mason City school system as a paraprofessional in the special education classroom. During this time her sons became old enough to be home alone, so Peggy continued her full-time work while also attending college classes on Monday and Thursday nights. After two and one-half years, in December 2003, she obtained an elementary education degree with a middle school endorsement from Buena Vista University. Peggy testified she would obtain a special education endorsement when she was able to complete the student teaching requirement for that specialty.

Although Peggy applied for full-time teaching positions in Mason City and nearby communities, she was not hired. Meanwhile, Peggy obtained a substitute teaching license and worked as a substitute teacher hoping those connections would lead to a full-time teaching position. Peggy testified full-time positions are difficult to obtain due to Mason City's declining school enrollment. In October 2007, however, Peggy obtained a full-time position teaching in the head start preschool program within the Mason City schools. The head start position allowed her to meet the benchmark requirements for a regular teaching license which she applied for in November 2007, one month after obtaining full-time employment. She now holds a regular teaching license.

The dissolution decree also ordered Randall to provide health insurance for the boys. Jill provides health insurance and dental insurance for both Randall and the boys through her employer. Jill has the $55.09 per month health and $12.75 per month dental premiums deducted from her paycheck.

At the time of the modification, the two oldest boys were nineteen and twenty-one

and had graduated from high school. The court ruled a substantial change of circumstances was shown and terminated child support for the oldest boys. The court also ended Randall's payment of the mortgage and other home expenses through the clerk of court's child support collection process. Using the minimum statewide salary for beginning teachers in Iowa as Peggy's income, the court modified the support for the youngest child. The court declined Randall's requests to make the child support reduction retroactive and to retroactively impose college subsidies.

We review this equity action de novo. Iowa R.App. P. 6.4.

## II. Child Support Obligation.

The district court averaged five years of Randall's income to arrive at a gross income of $85,160. Randall claimed entitlement to an income deduction for dependent health insurance. The district court disallowed the deduction noting Jill is not the parent of the three boys and Jill and Jill's employer are paying the health insurance premiums. Randall has not appealed this ruling.

■ Peggy's annual gross income from her head start teaching position is $17,117. Randall asked the court to utilize $26,500, the minimum statewide salary for beginning teachers in Iowa, as Peggy's gross income. The district court agreed, stated Peggy "could be described as underemployed" and ruled:

Although Randall failed to identify employment opportunities in the teaching field to which Peggy may qualify, this court believes that the significant length of time, since Peggy obtained her teaching degree in 2003, and the stringent geographical limitation Peggy imposed on her job search, support the conclusion that the earning capacity of a new

teacher should be used rather than Peggy's actual earnings.

Peggy testified she was unwilling to relocate due to the importance of maintaining a stable environment for their sixteen-year-old son, Corbin. Corbin has been diagnosed with chronic fatigue, has pain in his knees, hips and back, and takes numerous medications. Corbin has not been able to function in a traditional school setting for many years. Currently Corbin is working part-time and taking classes at a community college. His goal is to obtain his GED through the community college.

■ If a parent voluntarily reduces income or decides not to work, the court may consider earning capacity rather than actual earnings. *In re Marriage of Nelson*, 570 N.W.2d 103, 106 (Iowa 1997). However, before using earning capacity the court must "make a finding that, if actual earnings were used, substantial injustice would result or that adjustments would be necessary to provide for the needs of the child and to do justice." *In re Marriage of Flattery*, 537 N.W.2d 801, 803 (Iowa Ct.App.1995). In making this determination, the court examines the employment history, present earnings, and reasons for the current employment. *Nelson*, 570 N.W.2d at 106.

Upon our de novo review, we do not think it is appropriate to use earning capacity in place of Peggy's actual earnings. There is no evidence Peggy has not been actively looking for employment and has voluntarily reduced her income. To the contrary, while raising three sons and working full-time as a classroom aide she obtained a college degree to improve her employment prospects. Peggy then networked by taking substitute teaching positions and has recently started her first full-time teaching position. Peggy's career path shows a determined and consistent effort to be employed and to improve her employment situation. We will not penal-

ize Peggy because the Mason City area has declining student enrollment.

Additionally, Peggy's desire to remain in the same general area is reasonable in light of Corbin's special health concerns and in light of Corbin's current success in attending a community college at this location. Randall presented no evidence of other positions for which he believed Peggy was qualified. Under these circumstances and on this record, we find it reasonable for Peggy to work full-time in the head start job. We do not conclude the use of Peggy's actual earnings will result in a substantial injustice. Accordingly, we remand for a recalculation of child support using Peggy's actual earnings of $17,117 and Randall's average earnings of $85,160.

## III. Unreimbursed Medical Expenses.

 The 1998 dissolution decree instructed Randall to pay seventy-five percent and Peggy to pay twenty-five percent of uncovered medical expenses. However, Randall paid 100 percent of the uncovered medical. On August 9, 2006, approximately two months after Randall filed his petition for modification and over eight and one-half years after the decree; Randall sent Peggy a letter reminding her she was obligated to pay twenty-five percent.

At the hearing Randall stated Jill had paid up to eighty-five percent of the uncovered expenses while he paid the remainder. Randall testified their payments of 100 percent of the uncovered expenses were not voluntary. Rather, the expenses were paid "because the children need health care and pharmaceuticals and they weren't going to get them unless the bills were paid and that's why they were paid." Additionally, Randall stated the payments were necessary to "maintain our [Randall's and Jill's] personal credit histories."

Randall stated originally the medical providers sent the bills to Peggy and "she would send them over to us." However, "[i]n the last two or three years, because of the difficulty in passing bills around the neighborhood, Jill has asked the health care providers to simply send the bills to her." Randall acknowledged he did not provide Peggy an itemized accounting of the unpaid expenses. Randall explained he and Jill analyzed the medical bills the night before the hearing and calculated they paid $21,229.61 out-of-pocket and calculated Peggy owed $5307.47.

Randall testified he had not sought contempt for nonpayment and testified he did not think Peggy was intentionally or willfully violating the decree. Rather, "I think it would have been difficult for her to make those payments that I'm asking for credit and I don't know how she would do it except by paying me someday out of the house." Randall sought a judicial lien on Peggy's house for $5307.47, which the district court awarded.

Peggy first argues Randall's overpayments of medical expenses were voluntary and need not be reimbursed unless equity demands it. *See In re Marriage of Pals,* 714 N.W.2d 644, 650–51 (Iowa 2006). Second, Peggy argues the waiver theory of estoppel by acquiescence applies barring Randall's recovery. Because we conclude waiver by estoppel is applicable, we need not address Peggy's first claim.

 "Estoppel by acquiescence occurs when a person knows . . . of an entitlement to enforce a right and neglects to do so for such time as would imply an intention to waive or abandon the right." *Markey v. Carney,* 705 N.W.2d 13, 21 (Iowa 2005). This waiver "does not require a showing of detrimental reliance or prejudice." *Id.* Estoppel by acquiescence is applicable when:

(1) a party has full knowledge of his rights and material facts;

(2) remains inactive for a considerable time; and

(3) acts in a manner that leads the other party to believe the act [now complained of] has been approved.

*Id.* We conclude all three elements have been established. First, Randall, an attorney, knew he was only obligated to pay seventy-five percent and knew Peggy was ordered to pay twenty-five percent. Second, the record shows Randall did not seek to have Peggy pay her twenty-five percent of the expenses and was inactive for over eight and one-half years after the decree. Third, Randall did not even calculate the amount Peggy owed until the night before the hearing and he never provided her with an accounting of the expenses. Randall's consistent payment of 100 percent for over eight years without an accounting led Peggy to reasonably believe he was waiving her twenty-five percent contribution.

Randall argues estoppel by acquiescence does not apply because mere silence, even for a long period of time, "is insufficient evidence . . . to bar recovery of child support based on estoppel by acquiescence. . . . [W]e require some kind of affirmative act, inconsistent with the intention to collect child support" in order to imply waiver. *Id.* at 22.

Here the record shows more than prolonged silence because Randall took the affirmative action of arranging for the medical bills to be sent directly to his household and also took the affirmative action of actually paying Peggy's twenty-five percent for over eight years. When this affirmative action is combined with silence in providing an accounting and/or requesting payment, waiver is implied.

All Randall had to do was pay seventy-five percent of the uncovered medical expenses and then send the remainder of the bill to Peggy. He never did.

For all of the above reasons, we vacate the judicial lien imposed by the district court.

## IV. Trial Attorney Fees.

On appeal, Peggy seeks to have Randall pay $2500 of her $5000 trial attorney fees. The district court ordered Randall to pay $750 and Peggy to pay $4250. An award of attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *In re Marriage of Wessels,* 542 N.W.2d 486, 491 (Iowa 1995).

We conclude the court's award is an abuse of discretion. Peggy's earnings at the time of trial and at all times were significantly less than Randall's earnings. Paying $4250 to defend Randall's modification action will consume over twenty-four percent of Peggy's *gross* income. However, Randall paying $2500 will use less than three percent of his *gross* income. Randall filed for the modification and represented himself. Peggy was successful in defending many of the modification issues. For these reasons, we reverse the district court's attorney fee award and conclude Randall should pay one-half of Peggy's trial attorney fees: $2500. Costs on appeal are assessed to Randall.

### REVERSED AND REMANDED.