# IN THE COURT OF APPEALS OF IOWA

No. 23-2115
Filed October 1, 2025

**MICHAEL WEST and SHARON WEST,**
        Plaintiffs-Appellees,

**vs.**

**RODNEY STAJCAR,**
        Defendant-Appellant.
_____

**RODNEY STAJCAR,**
        Counterclaim Plaintiff-Appellant,

**vs.**

**MICHAEL WEST and SHARON WEST,**
        Defendants-Appellees.
_____

**RODNEY STAJCAR,**
        Third-Party Plaintiff-Appellant,

**vs.**

**SNIDER CATTLE, LLC,**
        Third-Party Defendant.
_____

        Appeal from the Iowa District Court for Appanoose County, Myron Gookin,

Judge.

        A civil defendant appeals from the district court's finding of a boundary by

acquiescence and its denial of attorney fees. **REVERSED AND REMANDED.**

        Bradley M. Grothe (argued) of Craver & Grothe, LLP, Centerville, for

appellant.

        Bryan J. Goldsmith (argued) and Carly M. Schomaker of Gaumer, Emanuel

& Goldsmith, P.C., Ottumwa, for appellees.

        Heard at oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

This appeal concerns a boundary dispute between adjoining landowners, Rodney Stajcar and Michael and Sharon West, over three neighboring parcels in Appanoose County. The Wests filed a petition for declaratory judgment regarding a disputed portion of a parcel boundary. Stajcar filed a cross petition alleging breach of covenant of warranty, estoppel by deed, and quiet title. This case was tried in equity. The district court sustained and granted the Wests' petition for declaratory judgment, thereby making the boundary line between Parcels A, B, and C the fence line shown in red on Exhibit 4, and legally described as the "Long Established Fence" on Exhibit W. The district court denied and dismissed Stajcar's defenses and counterclaims against the Wests and denied Stajcar's request for attorney fees and costs. For the reasons stated below, we now reverse and remand.

## I. Background Facts and Procedural Posture.

The Wests own real estate in Appanoose County. Rodney Stajcar also owns real estate in Appanoose County. There are three parcels at issue in the present case. The Wests own Parcel A and Parcel B, and Stajcar owns Parcel C. Parcel B borders Parcels A and C to the east. The disputed boundary is best described by a trial exhibit depicting an aerial view of the properties by Exhibit 4:



E-FILED 2023 JUL 14 2:32 PM APPANOOSE - CLERK OF DISTRICT COURT

The Wests owned all three parcels at the same time from October 1996 to December 2012. After having Parcel A surveyed, the Wests conveyed Parcel C to Snider Cattle, LLC in 2012, thereby ending the Wests' unitary ownership of all three parcels. When Michael West conveyed Parcel C to Snider, it was his understanding that the long-established fence line was the boundary between the parcels. Snider then conveyed Parcel C to Stajcar in 2017.

The present dispute arose in 2021 over the boundary line between Parcel B and Parcel C after a disagreement regarding fence maintenance. Stajcar had the

property surveyed shortly after the dispute. This survey showed the boundary line between Parcels B and C to be 17.9 feet east of the fence line. However, the fence line has been recognized as the boundary between Parcel A and Parcel B for multiple decades before this dispute.

## II. Standard of Review.

The parties have previously agreed that the claims before us would be tried in equity. Cases tried in equity are reviewed de novo. *Woods v. Charles Gabus Ford, Inc.*, 962 N.W.2d 1, 5 (Iowa 2021). We make our own legal and factual conclusions and are not bound by the trial court's conclusions under a de novo review. *Id.* But we give "great weight" to trial court's findings, as the trial court is in a much better position to weigh the credibility of witnesses than we are. *Sundance Land Co., LLC v. Remmark*, 8 N.W.3d 145, 150 (Iowa 2024).

We review the granting and denial of attorney fees for abuse of discretion. *Boyle v. Alum-Line, Inc.*, 773 N.W. 829, 832 (Iowa 2009).

## III. Discussion.

### A. Boundary by Acquiescence

Iowa Code section 650.14 (2021) states, "If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established." A boundary by acquiescence claim rises out of the conduct and consent of two adjacent property owners. *Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 52 (Iowa 2024).

> [I]t is the law in Iowa that where two adjoining property owners mutually acquiesce for ten or more consecutive years in a line definitely marked by a fence or in some other manner, it then

> becomes the true boundary although a survey may show otherwise, and neither party intended to claim more than called for by their respective deeds.

*Dart v. Thompson*, 154 N.W.2d 82, 84 (Iowa 1967). However, the Iowa Supreme Court recently clarified in *Sundance* that if several adjoining parcels that have previously been separate and distinct come under common ownership, said common ownership "unwinds that acquiescence." 8 N.W.3d at 155–56.

The district court issued its order in 2023 before the supreme court decided *Sundance*. The order held the Wests had proved by clear and convincing evidence that there had been mutual recognition and acquiescence of the subject fence as the acquiesced boundary of the parcels by previous landowners and Stajcar. *Sundance*, however, requires us to reverse this ruling. Because the Wests brought all three parcels under common ownership from 1996 until 2012, the clock for acquiescence was reset and only began running once the ownership was no longer unitary. *Id.* This dispute took place just shy of the ten-year requirement for acquiescence to have occurred under section 650.14.

Acquiescence could not have occurred under section 650.14, as the ten-year requirement had not been met between 2012 and 2021. Through no fault of the district court, the law changed after it issued its ruling. However, in accordance with the supreme court's recent precedent in *Sundance*, the district court's order must be reversed and remanded with judgment entered in favor of Stajcar.

## B. Estoppel by Acquiescence & Doctrine of Practical Location

Estoppel by acquiescence occurs when a party knows they can enforce a right but neglects to do so for an amount of time that would imply intent to waive that right. *In re Marriage of Nielsen*, 759 N.W.2d 345, 349 (Iowa 2008). Estoppel

by acquiescence applies when (1) a party has complete knowledge of his rights and material facts, (2) remains inactive for a considerable time, and (3) acts in a way that leads the other party to believe the now complained of act has been approved. *Id.* at 349–50. If the facts in the record show a party has pleaded and argued estoppel by acquiescence, then we can properly consider the doctrine of practical location. *Sundance*, 8 N.W.3d at 157; *see Schauland v. Schmaltz*, 107 N.W.2d 68, 71 (Iowa 1961).

The doctrine of practical location is grounded upon principles of express agreement, estoppel, and equity. *Kendall v. Lowther*, 356 N.W.2d 181, 188 (Iowa 1984). "[T]he doctrine must carefully be distinguished from the closely related doctrine of [boundary by] acquiescence." *Id.* For the doctrine to apply, the true boundary must first be disputed, indefinite and uncertain, and the parties must intend to settle the boundary line in dispute. *Id.* Further, grantors and grantees must all be aware of a boundary that is clearly marked on the land and evident or pointed out to them at the time of the conveyance. *Id.* The marked boundary will then control if the parties involved accept said boundary by their words or actions. *Id.*

The Wests claim to have alleged the affirmative defense of estoppel by acquiescence, thereby invoking the doctrine of practical location without explicitly pleading it. *Sundance*, 8 N.W.3d at 157; *see Schauland,* 107 N.W.2d at 71. We must assess whether the facts in the record show that the Wests pleaded and argued estoppel by acquiescence to determine whether we are able to consider practical location. A party must both plead and *argue* estoppel to bring the rule of practical location before us. *Schauland*, 107 N.W.2d at 71. However, the Wests

have only pleaded estoppel while neglecting to actually argue estoppel to the district court, thereby failing to preserve the issue for appeal.

Indeed, the Wests pleaded estoppel in their Answer, where they asserted that "[t]he claims of Stajcar are barred by Estoppel by Acquiescence." However, this is where the record begins and ends with any true development of an argument of estoppel. Significantly, the Wests did not make any mention of estoppel or practical location in their post-trial brief and a review of the trial transcript reflects the same.

In their brief, the Wests point to one line of questioning from trial to attempt to show they argued estoppel before the district court. We are unconvinced. The scant record the Wests rely on pertains to their cross-examination of Stajcar. It reads as follows:

Q. Rodney, it's my understanding that this issue came up in 2021. Is that fair to say? A. Yes.

Q. And what I mean by this issue is the dispute about the 17.9 feet in between Parcel B and Parcel A; correct? A. Yes, sir.

Q. Prior to 2021, nobody was fighting about anything; agree? A. Correct.

Q. When I say nobody was fighting about anything, what I mean is Mike West was maintaining all of the property on the east side of that, what we call boundary fence; agree? A. Yes.

Q. And you were maintaining all the property on the west side of that, what we're calling boundary fence; agree? A. Yes.

Q. And you purchased the real estate in April of 2017; correct? A. Correct.

Q. Did you see the real estate before you purchased it? A. Yes. I was familiar with that real estate.

Q. So you know what real estate you were purchasing and where it was located in April of 2017? A. Yeah, general facility— yeah, the general area, yeah according to the deed.

Q. And how were you familiar with the real estate? How did you know it? A. Because I used to live here.

Q. Okay. A. Drive by there.

Q. Okay. So you had some personal knowledge of the real estate and how it laid and those types of things? A. A little. Not a lot, but, yeah, a little.

Q. Did you go out and inspect and look at the real estate? A. No. I had my dad do that.

Q. So you had—you personally didn't, but you sent somebody to go out and inspect the real estate? A. I did.

Q. Okay. And you trust your dad when he went out and inspected it and checked it out for you? A. Yes.

Q. Assuming that you were aware, then, of the fence in between Mr. West's parcel and your parcel when you purchased the real estate? A. Yes.

Q. And it sounds like that fence has been there for maybe 100 years? A. Yeah.

Q. It was certainly there at the time that you purchased the real estate from Snider? A. Yes.

Q. And I understand you told me that after you purchased the real estate from Snider, you maintained the west side of the fence; correct? A. Yes.

Q. And West maintained the east side of that fence? A. Yeah. I already said yes to that.

Q. Then in 2021 you found out that you might own a 17.9 foot strip of land between the two parcels? A. That's correct.

Q. And you found out in 2021 when you got sued by Mr. West? A. Yeah. So we went to the trustees, had a meeting, and then after that, we took a look at the paperwork at the courthouse, and we saw a little strip there.

Q. And that's when you first discovered, oh, hey, wait a second, we got an issue here? A. Yeah, an issue and serendipity because I might have access to my property without having an easement on someone else.

Q. To be fair, you didn't know about that issue at the time you purchased the property from Snider? A. That's correct.

Q. At the time that you purchased the property from Snider, you had the west side of the fence and West had the east side of the fence? A. Yes.

Q. After the fence viewers dispute, and after you went to the courthouse, is when you first believed you owned that strip in between Parcel A and Parcel C? A. Yes.

Q. And that's when you first believed that you may own property on the east side of that boundary fence? A. That's correct.

. . . .

Q. Do you agree with me that in the four years that you owned this property before the fence viewers dispute, you and Mike West didn't have any fights about the boundary line? A. I believe that's accurate.

Q. After the fence viewers dispute, after you went to the courthouse, that's when the disputes began; agree? A. Yes, sir.

Q. And at least up until this point today, and I recognize the Court's going to decide this for us, but up until this point today, you and Mike West treat that property in the same manner that you always have where he maintains the east side of the boundary fence and you maintain the west side of that boundary fence? A. That's accurate.

Q. And that's the way you guys have . . . treated that property up through today pending the Court's ruling? A. Yeah. How else could you treat it?

This line of questioning alludes to Stajcar's awareness of the fence at the time of conveyance. However, it is not specific enough to prove any argument was made. In fact, this line of questioning proves the opposite. Stajcar testified that he did not have complete knowledge of his rights pertaining to the boundary until he was sued. We fail to see how this could be interpreted as Stajcar having complete knowledge of his right, sitting on those rights for a considerable time with full knowledge, or acting in a way that would lead the Wests to believe he approved of their conduct.

This is not enough to properly establish argument of estoppel. The facts in the record simply do not show that any such argument was set forth. But even if we are mistaken and estoppel had been argued, Stajcar did not comport himself in a way that would allow the Wests to prove estoppel or practical location. Stajcar could not have had complete knowledge of his rights and sat on them for a considerable time when he only attained full knowledge of those rights once the suit was filed.

## C. Estoppel by Deed

Because the Wests' boundary-line acquiescence claim fails, and their alternative theories were not presented to the district court (and thus cannot serve

as an alternative ground to affirm), the boundary line dividing the parcels is that described in the deed. As the failure of the Wests' claims means the boundary line described in the deed is the boundary, it is unnecessary to address Stajcar's claim of estoppel by deed.

### IV. Attorney Fees

Attorney fees are generally only permitted when allowable by statute or expressly authorized by a contractual agreement. *Van Sloun v. Agan Bros., Inc.*, 778 N.W.2d 174, 182 (Iowa 2010). However, we allow "the recovery of attorney fees incurred in defending title as an element of damages for breach of the covenant of title." *Gaede v. Stansberry*, 779 N.W.2d 746, 749 (Iowa 2010). "[B]efore a covenantee may recover the expenses attending the defense of the title to the property, the covenantor must be given notice of the proceeding in which the validity of the title is attacked and have failed to or chosen not to defend." *Id.* at 750 (citation omitted). In other words, one must "give notice and an opportunity to defend before one may recover attorney fees for breach of covenant of title." *Id.*

Here, it was the Wests who initiated these proceedings, prompting Stajcar to file his cross petition for breach of covenant of warranty, estoppel by deed, and quiet title. So the Wests had notice of Stajcar's claims, and they were given ample opportunity to defend against those claims. *See id.* As a result, we award Stajcar appellate attorney fees in the sum of $12,477.00, the amount listed in Attachment F to his motion for appellate attorney fees, which was submitted for our consideration by order of the supreme court.

When a district court is reversed on the merits and, as a result, fails to reach the question of whether a party is entitled to trial attorney fees, we are to remand

the case to the district court for a determination of what trial attorney fees should be awarded. *Hall v. Broadlawns Med. Ctr.*, 811 N.W.2d 478, 488 (Iowa 2012). Therefore, we award Stajcar with trial attorney fees, although we task the district court with determining the exact amount of reasonable trial attorney fees.

## V. Conclusion

*Sundance* requires us to reverse the district court's ruling and remand for entry of judgment for Stajcar and an award of trial attorney fees consistent with this opinion.

**REVERSED AND REMANDED.**